## SAMUEL BLAKE *vs.* JAMES DAMON.

On the trial of an action for assault and battery by blows struck on an occasion when the plaintiff met the defendant to adjust a money account, evidence is competent of how much he owed the defendant and how much the defendant afterwards paid him on the account.

On the trial of an action for assault and battery of the plaintiff by blows struck in the defendant's shop, evidence is competent that, shortly before the striking of the blows, and when the plaintiff was entering the shop, the defendant was talking with some customers about Calvinists and Methodists, and, as the plaintiff approached, remarked, " Here's a fellow who believes in hell."

On the trial of an action for assault and battery, at which the defendant testifies as a witness in his own behalf, it is competent for the plaintiff to examine him as to insulting remarks made by him, after the alleged assault, concerning the injuries inflicted on the plaintiff.

On the trial of an action for assault and battery, the plaintiff was a witness in his own behalf, and on cross-examination testified that before the alleged assault he never complained to anybody, and in particular, not to S., a blacksmith, or to O., of such an injury as he then received.   S. and O. then testified, for the defendant, that the plaintiff did so complain, in their presence, at a certain prior time, when he brought a colt to S. to be shod; and S. further testified that it was a colt called the Danvers colt, and that he broke the colt in order to shoe it, the plaintiff asking him to do so because on account of the injury he was unable to do so himself.   *Held*, that, as tending to show that S. and O. were mistaken in time, it was competent for the plaintiff then further to testify that he broke, himself, the Danvers colt, which he took to S. to be shod at said prior time, but that at a certain other time, after the alleged assault, he did take another colt to S. and ask him to break it; although he further testified, also, that O. was not present at this subsequent time.

In an action for assault and battery, since the practice act, (Gen. Sts. *c.* 129,) as before, if the plaintiff alleges acts which, if proved and not justified, will sustain his action, and the defendant seeks to justify them, the burden is on him to prove his justification.

TORT for assault and battery.   The declaration was as follows: " And the plaintiff says, the defendant made an assault upon him, and threw him with great violence upon and against a certain counter, whereby he received serious injury."   The plaintiff also filed the following specifications: " And now comes the said plaintiff, and, being called upon for a more particular specification, says, that the defendant violently and forcibly assaulted him in a certain shop in Ipswich, and seized him, and dragged and threw him upon the counter there, thereby inflicting many and severe bruises upon his arms, shoulders, loins and other parts of his body, and causing serious injuries to his private parts, and the muscles, tendons, cords and other parts

thereto adjacent, and causing serious and permanent disease of one of the testicles, and of the spermatic cord, whereby the plaintiff has suffered great pain and weakness and loss of capacity to labor, and been subjected to great expense and inconvenience."

The answer was as follows : " And now comes the defendant, and says that the plaintiff was in a certain shop, the same being the defendant's place of business in said Ipswich, and under his control, and the defendant requested the plaintiff to leave the premises, and, the plaintiff not departing therefrom, the defendant attempted with gentle force to remove him, and used no more force than was necessary for that purpose. And the defendant denies that he violently and forcibly assaulted the plaintiff, or that he in any way or manner assaulted him, or seized him, or dragged or threw him upon a counter, or inflicted any or severe bruises upon his arms, shoulders, loins or any part of his body, or caused any injury to his private parts, or the muscles, tendons, cords or other parts adjacent thereto, or caused serious or permanent injury or disease of one of his testicles, (or more,) or of the spermatic cord, or that the plaintiff has suffered any pain or weakness or loss of capacity to labor, or has been subjected to any expense or inconvenience by reason of anything done by this defendant."

At the trial in the superior court, before *Reed*, J., the jury found for the plaintiff, with damages in the sum of $2300, and the defendant alleged exceptions of which the following are all the parts that are material.

" There was evidence tending to show that on February 18, 1867, the plaintiff went to a shop in Ipswich, where the defendant had control and management, and, after some conversation between the parties about a bill claimed to be due from one party to the other, the defendant took hold of the plaintiff. The plaintiff contended and testified in his own behalf that it was done without giving him notice to leave the shop, or time to do so ; and that the defendant violently pushed him against a counter," injuring his left hip, and his abdomen between the hip and his navel, and also the spermatic cord of his left testicle. " Th

defendant contended, and himself and other witnesses in his behalf testified that he gave the plaintiff notice, ordered him out of the shop, opened the outer door and told him to leave the shop, and, after the plaintiff had time enough to leave the shop, but did not, then took hold of him gently for the purpose of pulling him towards the door to eject him from the shop; that the plaintiff resisted, remained in the shop, and after a few minutes passed out of his own accord."

" The plaintiff, in his direct examination, testified, in substance, ' I never had any difficulty before. It produced an affection of the spermatic cord;' referring to the time of the alleged assault, and the disease produced by it. On cross-examination, he testified: ' All the injuries I now have I received from the assault by the defendant. I mean, I never had difficulty of this kind before the time of the alleged assault;' referring to the affection of his spermatic cord. ' I have never said so to anybody. I never complained of being injured, before the time of said assault, to anybody. I know Benjamin Smith, of Ipswich, the blacksmith. He did shoe a colt for me in 1864. I went to get him to shoe a colt in 1864. He never asked me if the colt was broken, until after I got hurt by said assault. I never told Smith in 1864 that I would bring a bridle to break the colt with. I did say so in 1867. I did not tell Smith so when Patrick O'Connell was at work for him as an apprentice. I did not say in 1864, while O'Connell was at work for Smith as an apprentice, that I hurt myself in trying to break a colt, or that I had hurt myself and brought on an old difficulty, or that in substance, or anything like that. I know I never said anything like that, either to Smith or O'Connell.' No reëxamination was made by the plaintiff on this point, as to what the plaintiff had said or done with Smith or O'Connell.

" Smith was called as a witness by the defendant, and testified in chief that O'Connell was an apprentice to him in 1864 and up to May 1865: that in October 1864 the plaintiff came into the shop of the witness early in the morning, at his request; that the witness asked the plaintiff if he had broken the colt down so the witness could handle his legs, and the plaintiff in reply

Blake v. Damon.

said, ' No,' that he was the toughest customer he ever got hold of; that he tried to break the colt yesterday, but he hurt the plaintiff and brought an old trouble on the plaintiff; and that the plaintiff then placed his left hand on his side, between his left hip and navel, showing where the place was that he got hurt; that the plaintiff then sat down in the shop and continued to complain of his side, and the witness thereupon broke the colt and shod him; that O'Connell was not there when the plaintiff first came with the colt, but came soon after and held the head of the colt, while the witness shod him; that there was but one occasion when the plaintiff complained of having been hurt, when O'Connell was in the shop as an apprentice. On cross-examination, Smith testified that it was the Danvers colt he shod in 1864, of which he had testified; and that the plaintiff did not bring him a colt to shoe, in 1867, which he said had not been broken. On reëxamination, he testified there was but one occasion, when the plaintiff complained of being hurt, when O'Connell was present.

" O'Connell was then called as a witness by the defendant, and testified in chief, that he was at work for Smith in October 1864, and remembered his shoeing a colt for the plaintiff; that he found Smith, the plaintiff and the colt in Smith's shop one morning early ; that he heard the plaintiff then complain of his side ; and that the plaintiff said he was breaking the colt yes-terday afternoon, and hurt his side. On cross-examination, the witness said that the plaintiff said he had hurt his side in trying to break down the colt yesterday, but did not say what kind of a hurt it was.

" On the part of the defendant, Mrs. Julia F. Proctor was called as a witness, who testified in chief, that she was with another woman trading with the defendant in the shop, on the day of the alleged assault; that she heard the defendant tell the plaintiff, while behind the counter, to leave the shop; that the plaintiff then walked away from the door and further down the shop; that the defendant went to the outer door, opened it and told the plaintiff to leave; and that thereupon she left the shop On cross-examination, against the defendant's objection, the

judge allowed the plaintiff to ask her: ' Was not the defendant, while you were talking with him, as the plaintiff came up to where you were, using profane and abusive language in regard to Calvinists and Methodists?' The plaintiff had previously testified in chief, under objection, that, as he approached the defendant in the shop, the defendant was talking with the women about hell and damnation, or the doctrines of eternal punishment, and then, turning towards him, said, ' Here's a fellow who believes in hell.' The defendant had also testified in chief on the same subject, and had denied this. He was cross-examined on the subject, and was asked whether, when the plaintiff came towards him, he was not using profane and abusive language about Calvinists and Methodists, and did not apply it directly to the plaintiff; and he said he did not. The judge thereupon allowed the question to be put to Mrs. Proctor; and she answered that he was criticising, not abusing them.

" The defendant was called as a witness in his own behalf, and testified in chief as stated. On cross-examination, he was asked, ' Have you ever used insulting language to the plaintiff since this action was brought, in the street or a public place?' To this question the defendant objected, on the ground that it was not competent for any purpose; but if for the purpose of showing bias and prejudice in the defendant as a witness, then that the question should be at first generally as to the state of feeling between the plaintiff and the defendant, whether hostile or not, (and the defendant was willing to agree that it was hostile,) but that the plaintiff had no right to inquire as to particular acts showing such hostility; that all such acts were purely collateral, and were incompetent and inadmissible. The judge overruled the objection, and the plaintiff was permitted to and did ask the above question, to which the defendant replied, ' I did ask him, at the time of the last trial, how his balls were, at the dinner table.' The plaintiff then asked the defendant, ' Did you then ask the plaintiff how his balls were, at the time of the last trial, to insult him?' To this the defendant objected as before, and the judge overruled the objection, and the defendant in answer said, ' I said that, because it came into my mind quick; and I said it quick.'

" The defendant was also asked, on cross-examination, against his objection, ' How much was the bill owed you ? ' and replied, Two dollars and sixty-seven cents. That is the bill in your hand.' And, against the defendant's objection, said bill receipted was produced by the plaintiff and read in evidence to the jury. The defendant, against the plaintiff's objection, was also asked, ' Have you since that time,' referring to the time of the account, ' paid the plaintiff any money ? ' In answer, the defendant replied, ' I think I have paid him five or six dollars.'

" After the testimony for the defendant was in, the plaintiff recalled himself as a witness, and, against the defendant's objection, which was overruled, testified in substance, ' I had a colt in my possession, called the Danvers colt, in 1864. I broke that colt. I had no more trouble with him than any other colt. He kicked me once, but did not hurt me. I remember when I took that colt to Smith to shoe. I did not tell him I had been hurt the day before.' On cross-examination, he said, ' I don't say I did not take a colt to Smith to shoe in 1864, but I do swear he did not break it. I do swear that I did not say to Smith or O'Connell, in substance, that I had got hurt the day before.' He was then reëxamined, and, against the defendant's objection, which was overruled, was asked to state what the transaction was that occurred between him and Smith in November 1867, and answered, in substance, ' In November 1867 I took a colt to Smith, and said I was not able to handle the colt and should give it up to him. O'Connell was not then in the shop.' To this answer the defendant objected as incompetent, but the judge overruled the objection and allowed the evidence. On cross-examination, he said : ' I took the colt from Rowley November 7, 1867; am sure of it; took it to Smith next day. I don't recollect what time O'Connell left Smith, but he was not at work at this time as an apprentice, and had not been for two years. I can't say as I had seen O'Connell at Smith's for two years.' The defendant then attracted the attention of the judge to the fact that the last testimony of the plaintiff did not purport to cover the same time that Smith and O'Connell had testified to, and was thereby incompetent to con

tradict them or either of them ; but the judge overruled the objection, and made no allusion thereto in his charge to the jury."

The defendant submitted nine prayers for instructions, the last four of which were as follows :

" 6. That the burden of proof under the pleadings is upon the plaintiff throughout, to prove to the jury, by a fair preponderance of evidence, that the defendant illegally assaulted the plaintiff; and that, if the plaintiff does not support the burden of proof, or leaves it doubtful in the jury's minds, taking into view the testimony offered by the defendant as well as the plaintiff, whether or not the defendant did illegally assault the plaintiff, then he cannot recover, and the verdict must be for the defendant.

" 7. That under the pleadings the defendant does not concede that he assaulted the plaintiff, nor does the defendant take upon himself at all to justify an assault; and that, if the defendant, in said shop, placed his hands on the plaintiff to remove him from said shop, after having notified and ordered the plaintiff to leave the shop, the defendant then and there having the control of the shop, and the plaintiff not going out of the shop, but remaining therein, then such placing of hands upon the plaintiff, or force used, in his removal from the shop, if no more force was used than was necessary and proper under the circumstances, is not an assault.

" 8. That the mere fact that the defendant did take hold of the person of the plaintiff, and attempt to remove him from the shop, does not thereby shift the burden of proof from the plaintiff to the defendant; that, in order for the plaintiff to recover, he must show, by a proper preponderance of evidence, taking into view that offered on the part of the defendant as well as on the part of the plaintiff, that what he calls an assault was in fact illegal and unjustifiable, and if, in all the evidence, the plaintiff should leave it doubtful whether what he alleges as an assault was or not illegal or unjustifiable, he cannot recover; that it is the duty of the plaintiff, on all the evidence, affirmatively to make it appear that the defendant illegally and unjustifiably assaulted the plaintiff.

Blake *v.* Damon.

"9. That the burden of proof is upon the plaintiff to show that the defendant had no right under the law to do that which the plaintiff claims was an assault; and that, if it should appear that the defendant, under the circumstances, did have a legal right to do that which the plaintiff calls an assault, or if the plaintiff on all the proof leaves it doubtful in the jury's mind whether or not the defendant had a right to do that which the plaintiff calls an assault, then the motive of the defendant or his manner or language, however coarse, abusive, profane or vulgar, is wholly immaterial in this action at law."

" The plaintiff, among other things, contended and argued to the jury, that the object and purpose of the defendant, in laying hands on the plaintiff, was to punish and injure him, and not to eject him from the shop after notice given him to leave.

" The judge, among other things, instructed the jury that a violent laying of hands upon another against his will constituted an assault and battery, unless it was justifiable; and that, if the jury should find such a laying on of hands in this case, they should find a verdict for the plaintiff for some damages, unless the defendant showed a justification; and that the burden was upon the defendant to show such justification; and that, if the jury found such an assault, and were in doubt on the whole whether the act was justifiable, they should find for the plaintiff.

" The judge instructed the jury as requested by the defendant as to the use of insulting language, and as to all other matters except as in the ninth prayer and those prayers concerning the burden of proof; and as to the ninth prayer instructed them that, if the purpose and intent of the defendant in the acts done by him were to punish the plaintiff, and not to eject him from the shop, then the acts would constitute an assault, although they might find that the plaintiff had been ordered to quit the shop, and had had a reasonable time for so doing. The seventh prayer, except as to that part of it which concerns the effect of the pleadings, was given."

*G. A. Somerby,* for the defendant. 1. What the defendant said to the women, before any conversation between the plain-

tiff and the defendant, was incompetent. Its purpose and effect were to prejudice the jury against the defendant.

2. Whether the plaintiff owed the defendant, or the defendant owed the plaintiff, was wholly immaterial and incompetent, and the evidence admitted on the subject was adapted to mislead the jury from the true issue and to prejudice the defendant.

3. The rule is, that bias may be shown on the part of a wit-ness, but he should first be asked if he has bias, and to what ex-tent. If he concedes bias, then it is wholly collateral to inquire into the circumstances showing it. If he denies having it, or the extent of it, perhaps he may be asked as to acts or declara-tions showing it, and, if material, be contradicted as to them. If the rule were otherwise, the parties would be compelled to try each circumstance showing bias of each particular witness, with the same rigor as the main issue of the action. The object in the present case was, not to show bias, but to prejudice the jury by the circumstances claimed to show it.

4. The admission of what took place between the plaintiff and Smith in November 1867 was incompetent. The plaintiff, in his examination in chief, had testified that he never had any difficulty before the alleged assault; and that it produced an affection of the spermatic cord. On cross-examination he said that he had never been injured, and never complained of being injured, before the alleged assault. He was asked if he did not say, in presence of Smith and O'Connell, that he hurt himself in attempting to break a colt in October 1864. This he denied. To contradict him Smith and O'Connell were called, and swore that in October 1864, in their presence, he said that he tried to break the colt yesterday and hurt himself and brought on an old trouble. The plaintiff was not reëxamined on this point. But, against objection, after this, he was allowed to be called as a wit-ness in his own behalf and repeat his former denial, stated on cross-examination; and also to testify to another conversation, which he had with Smith at a different time and when O'Connell was not present.

5. The pleadings were under the practice act, Gen. Sts. *c.* 129 It was an action of tort. The plaintiff was compelled to state

the facts he relied on to maintain his action ; and on the other hand the defendant was compelled, in addition to answering the plaintiff's allegations, to set forth any substantive fact intended to be relied on in avoidance of the action. The defendant denied every allegation of plaintiff as fully as he had stated it; and set forth as a fact what he himself did. If what he set forth does not constitute an assault, then he had not admitted any assault, under the pleadings, and it is wholly immaterial to consider what the position of the parties would have been before the adoption of the practice act. Suppose that, before the practice act, in order to justify, as it was called, the defendant had to admit that he had assaulted the plaintiff; Gould Pl. *c.* 6, § 111; it does not follow that under these pleadings such would be the case. For the dispute between the parties was whether there was an assault at all; not that the defendant conceded an assault and sought to excuse or justify it. The only object of the practice act, in compelling a defendant to set forth the facts he relies on in defence, is, to give the plaintiff notice of the true issue, and have the parties come prepared to try the same questions of fact. In the present case, the plaintiff was compelled to begin with the burden of proving an assault; this burden was not removed by the defendant's answer, which denied any assault and stated no facts which show an assault. An assault and battery is an unlawful and unjustifiable use of force and violence, however slight, upon the person of another. A justifiable use is not an assault and battery. *Commonwealth* v *Clark*, 2 Met. 23. *Commonwealth* v. *McKie*, 1 Gray, 63, 64. The rulings given in the present case assume that an assault was made, and from them the jury may have thought that the defendant had to excuse or justify an assault which he had persistently denied. The judge should have defined carefully what was in law an assault, and have said that what constitutes an assault under one state of facts may not constitute an assault under other and different circumstances, and that, as the plaintiff relied upon an assault, within the legal definition of that word. he must prove it notwithstanding the evidence which had been put in by the defendant.

*S. B. Ives, Jr.*, for the plaintiff, to the points of the defendant's argument relating to the admission of evidence on the main issue, cited *Fisher* v. *Plimpton*, 97 Mass. 441 ; to the point relating to showing bias of the defendant as a witness, *Day* v. *Stickney*, 14 Allen, 255, and *McGuire* v. *McDonald*, 99 Mass. 49 ; and to the point relating to the burden of proof, *Gray* v. *Gardner*, 17 Mass. 188; *Davis* v. *Jenney*, 1 Met. 221; 1 Chit. Pl. (6th ed.) 500, 501; 2 Greenl. Ev. §§ 95, 98; *Phelps* v. *Hartwell*, 1 Mass. 71 ; *Loring* v. *Steineman*, 1 Met. 204, 211 ; *Crowninshield* v. *Crowninshield*, 2 Gray, 524, 531; *Commonwealth* v. *McKie*, 1 Gray, 62.

CHAPMAN, C. J. Several exceptions were taken at the trial which were not insisted on at the argument. They must be regarded as waived.

The assault and battery alleged took place in the defendant's shop, where the plaintiff seems to have gone to adjust a money account with the defendant. When the plaintiff entered the shop, the defendant was making some offensive remarks, which the jury might find applicable to the plaintiff, and soon afterwards made the assault. It was proper to prove the remarks as part of the *res gestæ;* also the amount of the bill which was part of the account; and the amount of money afterwards paid on the account by the defendant. These facts were pertinent, though not very material.

As the defendant testified in the case, it was proper to prove any insulting remarks made, or questions put, by him to the plaintiff at a subsequent time, in regard to the injury inflicted by the defendant; for they tended to show his state of mind towards the plaintiff. *Day* v. *Stickney*, 14 Allen, 255.

The plaintiff's testimony as to what he said to Benjamin Smith in November 1867, several months after the assault and battery, was competent, because it tended to explain an apparent contradiction. The plaintiff had testified on cross-examination, that he never, before the assault and battery, received an injury similar to that which he received then. He was inquired of as to what he said to Smith on the subject, in 1864, when he went to get a colt shod, and denied having made certain remarks

at that time. Smith and O'Connell had been called to contradict him ; and had testified to certain conversations, stating the times when they took place. The plaintiff's testimony in reply tended to show that they were mistaken as to the time, and had no bearing on the case in any other respect. For this purpose it was admissible.

But the exception principally relied upon relates to the burden of proof. The court ruled, in substance, that the burden was on the plaintiff to prove the assault and battery, but was on the defendant to prove any facts relied on by him in justification. The defendant's position is, substantially, that the plaintiff must prove that the act was unjustifiable. We understand the rule to have been established the other way from the earliest times. In the pleadings the plaintiff alleged the violent acts, and upon proof of them was entitled to maintain his action ; and the defendant in his plea must allege such facts as he relied upon in justification, and in order to defeat the action he must prove the truth of his allegations. The rule is not changed by our present system of pleadings. *Exceptions overruled.*