(Decided 2nd March, 1877.)

---

THOMAS DEFORD, BENJAMIN F. DEFORD and J. F. ELY *vs.* WILLIAM H. DRYDEN, J. C. KRAFT and L. E. WILCOX.

*Certain Prayers held not Contradictory or misleading—Province of the Jury.*

In a case where a prayer of the plaintiffs, based upon the theory of an *exchange* of certain goods, for certain notes, and a prayer of the defendants, based upon the theory of a *sale* of the goods for the notes, were both granted, it was HELD:

1st. That whether the transaction was an agreement for an exchange or a sale, was a question for the jury.

2nd. That the prayers were not contradictory, and fairly presented the question to the jury for their decision.

Case where a prayer of the defendants, granted in connection with a prayer of the plaintiffs, was held not inconsistent therewith, and not liable to confuse or mislead the jury.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court. The following are the prayers of the respective parties, to which special reference is made by the Court.

*Plaintiffs' Third Prayer.*—Even if the jury shall find that nothing whatever was said in the contract between the parties to this suit, in reference to recourse or non-recourse to the plaintiffs upon the paper of J. Q. Hewlett & Son, yet if the jury shall find that, in consequence and in pursuance of, and in view of the previous dealings of the parties, it was their common and tacit understanding that the Hewlett paper was to be taken without recourse, and the contract was made subject to that understanding, then the jury must accept such understanding as constituting the contract in that regard.

*Plaintiffs' Fourth Prayer.*—If the jury shall believe that the contract between the parties to the suit was substantially an agreement to exchange or trade hides upon the one part, for Hewlett's paper on the other part, and nothing whatever was said or agreed between them as to recourse or non-recourse to the plaintiffs upon such paper, or in case of its not being paid, then the failure of J. Q. Hewlett & Son, and the comparative worthlessness of their paper are no bar whatever to the right of the plaintiff to recover.

*Defendants' Second Prayer.*—If the jury shall find from the evidence that the defendants, on the 5th October, 1875, agreed to sell to the plaintiffs 500 hides at $11\frac{1}{4}$ cents per pound, to average sixty pounds each, to be paid for in the promissory notes of J. Q. Hewlett & Son, at four

months, with interest added, and that nothing was said at the time of said sale as to whether said notes were to to be taken without recourse, and that defendants did not at the time of said sale, or at any time afterwards, agree to accept said notes in full payment for said hides, and to run the risk of their being paid, then the plaintiffs cannot recover in this action, if the jury shall find from the evidence that before the time for the delivery of said hides under the said agreement, said J. Q. Hewlett & Son failed. and were declared bankrupt, and that the 218 hides which were delivered on October 13, 1875, were delivered before the defendants were aware of said failure, and that upon their becoming aware of said failure, the defendants demanded a return of 218 hides or payment thereof by the plaintiffs in cash, or their own notes at four months.

(Refused as offered, but granted in connection with the plaintiffs' third prayer, which states the evidence from which an agreement to take the notes of Hewlett & Son, without recourse to Deford & Sons, if they were not paid, may be inferred.)

The cause was argued before BARTOL, C. J., GRASON, MILLER and ROBINSON, J.

*John H. Thomas* and *S. Teackle Wallis,* for the appellants.

The Court erred in granting the defendants' second prayer. It was not a proper modification of the plaintiffs' third prayer, or of either of the others which the Court granted, but so entirely in conflict with them all as necessarily to confuse and mislead the jury. *Balto. & Ohio R. R. Co. vs. Blocher,* 27 *Md.,* 286; *Adams vs. Capron,* 21 *Md.,* 206; *Haney vs. Marshall,* 9 *Md.,* 215; *Roddy vs. Finnegan,* 43 *Md.,* 505.

An express contract may be established by *circumstantial* as well as positive proof. *Haines vs. Pearce,* 41 *Md.,* 231.

This prayer was therefore wrong in instructing the jury that they must find for the defendants, if nothing was said at the time of the sale, as to whether the notes were to be without recourse. The jury had a right to infer such a contract from the previous course of dealing and other circumstances. 2 *Taylor's Ev.*, 103 ; *B. & O. R. R. vs. Wheeler*, 18 *Md.*, 372; *Bank of Metropolis vs. New England Bank*, 1 *How.*, 234.

The latter. part of it has no proper connection with the first, and is an especially unfit modification of the law of any of the defendants' prayers.

The appellants had as much right before as after the failure of J. Q. Hewlett & Son to pay for the goods in their paper. If the contract provided for such payment, the fact of the notes having subsequently become worthless did not abrogate it. *Phelan vs. Crosby*, 2 *Gill*, 462 ; *Thorington vs. Smith*, 8 *Wal.*, 1 ; *Osborn vs. Nicholson*, 13 *Wal.*, 654-9 ; *Lambert vs. Heath*, 15 *M. & W.*, 484 ; *Benjamin on Sales, p.* 309, 1*st Ed.*, and 322-3, 2*nd Ed., Am. Ed., secs.* 425, 739.

The Statute of Frauds does not require delivery of goods by the vendor, but *acceptance* of them by the vendee to constitute a sufficient parol contract of sale. The latter alone may exercise the option of consummating or not an incomplete contract. 17*th section of Statute of Frauds ; Brown on Statute of Frauds*, 504 ; *Jones vs. Mechanics' Bank*, 29 *Md.*, 293.

Acceptance of part of the goods is sufficient to bind the contract as to the other part. *Hewes vs. Jordan*, 39 *Md.*, 483.

The right of stoppage *in transitu* only arises where the vendee has become insolvent, not where the paper in which he was to pay has become impaired in value, or even worthless. *Leading Cases in Mercantile Law*, 653, mar. ; *Wilmshurst vs. Bowker*, 2 *Man. & Gr.*, 792.

If the goods were to be paid for by the notes of J. Q. Hewlett & Son without recourse, it was an agreement for

the exchange of the one for the other. *Benjamin on Sales,* 1st *Ed.,* 545, *and* 604, 2nd *Ed. ; Clark vs. Mundal,* 1 *Salk.,* 124; *Ward vs. Evans,* 2 *Ld. Raymond,* 928; *Bank of England vs. Newman,* 1 *Ld. Raymond,* 442; *Read vs. Hutchinson,* 3 *Campb.,* 351; *Ellis vs. Wild,* 6 *Mass.,* 321-3; *Byles on Bills,* 224, (*mar.* 123,) 357, (*mar.* 229,) *and* 456, (*mar.* 307,) 6 *Am. Ed.,* 252, 575 ; 2 *Am. Leading Cases,* 216; *Emly vs. Lyde,* 15 *East,* 1–12, *and note.*

For these reasons none of the hypotheses mentioned in the proviso to the defendants' second prayer affected the appellants' right to recover. They are, nevertheless, put in said prayer so as to create, on the minds of the jury, the impression that they are vital to it.

*Bernard Carter,* for the appellees.

That defendants' second prayer, even without being qualified, fairly enunciated the law as laid down in Maryland, is abundantly established by the following authorities. *Patapsco Ins. Co. vs. Smith,* 6 *H. & J.,* 166; *Glenn vs. Smith,* 2 *G. & J.,* 509-512 ; *Crawford vs. Berry,* 6 *G. & J.,* 71; *Berry vs. Griffin,* 10 *Md.,* 27; *Tobey vs. Barber,* 2 *Am. Leading Cases,* 299, 300.

This prayer was drawn strictly in accordance with these views, and left the whole question properly to the jury. It was a proper instruction therefore to be given even standing alone.

But the Court, by granting this prayer in the mode it did, said as clearly as language could put it, that though such an agreement as is spoken of in defendants' prayer must be found, yet the jury need not find that there was any express agreement to this effect, but might infer such an agreement; and not only so, but might infer it even from previous dealings, and though it was only a tacit, and not an expressed agreement. What more could the appellants have asked?

GRASON, J., delivered the opinion of the Court.

This suit was brought in the Superior Court of Baltimore City, by the appellants to recover from the appellees damages for an alleged breach of contract, in not delivering two hundred and eighty-two hides, the balance of five hundred, which the *narr.* charges and the proof shows the latter had agreed to dispose of to the former. The counsel of the respective parties filed a written agreement in the case waiving all errors in pleading, and agreeing that either party might rely upon any matter of claim to which they would be entitled, if the same had been specially declared on or pleaded. Evidence was introduced by the appellants, tending to prove that the appellees agreed to deliver to them five hundred hides of certain weight, at eleven and one-quarter cents per pound, to be paid for in the notes of Hewlett & Son, without recourse to the appellants. They offered evidence further to prove, that they had previously purchased hides of the appellees upon five or six occasions, and given in payment the paper of other firms, some of which was not endorsed by appellants, and others of which was, and that when so endorsed they had taken from the appellees a writing, by which it was agreed, that the appellants should not be held liable by reason of their said endorsement, in the event of the paper not being paid at maturity, but that they should be released from the same. They also offered proof to show that on the 13th October, the day before the hides were to be delivered under the agreement, they heard a rumor that Hewlett & Son would be protested that day, and that they immediately sent to the appellees' place of business, and procured the delivery of two hundred and eighteen hides.

The appellees offered evidence tending to prove, that they entered into the contract with the appellants, to sell them five hundred hides at the price of eleven and a quarter cents per pound, and to take the paper of Hew-

lett & Son in payment, but that nothing was said at the time of making the agreement, or thereafter, about taking it without recourse to the appellants, that they expected the paper of Hewlett & Son to be drawn to the order of the appellants, and to be endorsed by them. They further proved that they did not know what they would have done, if the paper of Hewlett & Son had been drawn as they expected, but suppose they would have released the appellants from liability on their endorsement, by a written release similar to those they had given on previous occasions. It was further proved by them that the hides were to be delivered, under the agreement, on the 14th October, and that on the 13th, one of the appellants came to the place of business of the appellees with a large number of drays, and induced them to deliver two hundred and eighteen of the five hundred hides at that time. It further appears in proof that Hewlett & Son were protested on the 13th October, and were afterwards adjudged bankrupts, but that the appellees had no knowledge that they had been protested at the time they delivered the hides, on the afternoon of the 13th October, but heard it the next day, and refused to deliver the balance of the hides, and made a demand upon the appellants for a return of those already delivered. Upon this state of the proof the appellants offered five prayers, all of which were granted, and the appellees four, all of which were rejected as offered, but the Court granted their second in connection with the appellants' third. The judgment being for the appellees, the plaintiffs took this appeal.

It is contended that the Court erred in granting the appellees' second prayer in connection with the appellants' third, because, as they allege, it is inconsistent with and contradictory of both their third and fourth. Their fourth prayer is based upon the theory of an *exchange* or *barter* of the hides for the paper of Hewlett & Son, while the appellees' prayer, on the contrary, is based on the theory

that the transaction between the parties constituted a *sale* of the hides, the consideration for which was to be paid in the notes of Hewlett & Son. Whether the transaction was an agreement for an *exchange*, or a *sale*, was a question for the jury to determine, and these prayers of the respective parties fairly presented that question to them for decision. We think it clear, that there is no conflict whatever between the appellees' prayer and the appellants' fourth, the former instructing the jury that if they should find that it was a contract for a *sale* of the hides, and should further find the other facts stated in the prayer, that then their verdict must be for the appellees ; while the latter instructed them that, if they should find that it was an agreement for an *exchange* or *trade* of hides for Hewlett & Son's paper, then the fact that nothing was said about recourse to the plaintiffs upon such paper, and the failure of Hewlett & Son, and the comparative worthlessness of their paper, were no bar to the appellants' right to recover. These instructions are based upon entirely separate and distinct theories, are not contradictory, and can well stand together.

It was further contended that the appellees' prayer is inconsistent and in conflict with the appellants' third prayer. The appellees' prayer instructs the jury that, if they shall find a sale of the hides, as stated in the prayer, to be paid for in the notes of Hewlett & Son, and shall further find that nothing was said at the time of the sale as to whether said notes were to be taken without recourse to the appellants, and that the appellees did not, at the time of sale, or at any time afterwards, agree to accept said notes in full payment of the hides and to run the risk of their being paid, then the appellants are not entitled to recover in this action if the jury shall further find that, before the time for the delivery of the hides under the agreement, Hewlett & Son failed and were declared bankrupt, and that the two hundred and eighteen hides were

delivered before the appellees were aware of said failure, and that upon becoming aware of said failure they demanded a return of the hides so delivered, or payment in cash, or the notes of the appellants at four months. This prayer, as we have said, was refused by the Court as an independent proposition, but was granted in connection with the appellants' third prayer. The latter contains an instruction that if nothing was said in the contract between the parties in reference to recourse or non-recourse to the appellants upon the paper of Hewlett & Son, yet, if in consequence, and in pursuance, and in view of the previous dealings of the parties, it was their common and tacit understanding that said paper was to be taken without recourse, and the contract was made subject to that understanding, the jury must accept such understanding as constituting the contract in that regard.

The Court in granting the appellees' prayer in connection with this, endorsed upon it that it was granted in connection with the plaintiffs' third prayer, "which states the evidence from which an agreement to take the notes of Hewlett & Son without recourse to Deford & Son, if they were not paid, may be inferred." The two prayers must, therefore, be taken and read together, and when so read, we think it clear that the appellants' may be fairly regarded as a modification of the instruction granted under the appellees' prayer. Taking them together, they instruct the jury that, if they find that at the time of the agreement between the parties, or afterwards, nothing was said about recourse to the appellants upon the paper of Hewlett & Son, and shall find the other facts stated in the prayer, the appellants are not entitled to recover; although notwithstanding nothing about recourse to the appellants was said at the time of making the agreement, or afterwards, if the jury shall find that in consequence, and in pursuance, and in view of the previous dealings of the parties, it was their common and tacit understanding that the

Hewlett paper was to be taken without recourse, and the contract was made subject to that understanding, then the jury must accept such understanding as constituting the contract in that regard. This reading of the two instructions shows them to be not only consistent, but we do not think that any jury of ordinary intelligence could misunderstand, or be confused or misled by them. And especially is this so, when the Court, in granting the appellees' prayer, pointedly directed by a written endorsement on it, the attention of the jury to the appellants' third prayer, by which they were instructed that they *must* accept the common and tacit understanding of the parties that no recourse was to be had to the appellants on Hewlett's paper, if they should find such to be their common and tacit understanding from their previous dealings, even though nothing was in fact said about recourse *at the time* of the agreement or *afterwards.*

*Judgment affirmed.*

(Decided 2nd March, 1877.)

