*R. E. Lee Marshal* and *John Hanson Thomas,* for the appellant.

*John Hinkley,* for the appellee.

ROBERT SELLMAN ET AL. *vs.* JULIAN D. WHEELER.

*Assault and Battery—Admissibility of Evidence—Declarations as to Physical Injury—Joint Tort Feasors—Instructions to the Jury.*

Appeal from the Circuit Court for Carroll County (THOMAS, J.) *Affirmed.*

This is an action of trespass *vi et armis* for an alleged assault and battery by the appellants upon the appellee. The *narr.* contains but one count in the usual form, charging the defendants as joint tort feasors, and alleging special damages by reason of expense incurred for medical and surgical attendance.

The defendants pleaded *non cul*, and also filed three pleas in confession and avoidance, in all of which it was alleged that at the time of the assault charged, they were possessed of a building in which the plaintiff was trespassing, and from which, though requested, he refused to depart, and that they then removed him, using no more force than was necessary. The second and third of these pleas also alleged that the defendants kept the U. S. Post Office at Watersville, and a retail store, in the building, and that plaintiff while in the building made a noise and disturbance therein, and conducted himself in a rude and quarrelsome manner. The plaintiff joined issue on the first plea, and replied to the 2nd, 3rd and 4th pleas, alleging the use of more force than was necessary in his removal. Issues were joined on these replications, and an agreement was filed waiving all errors in pleading, and providing that either party might offer any testimony admissible under any state of the pleadings.

There are four exceptions presented by the record; two with respect to evidence admitted subject to exception, and subsequently refused to be stricken out; one to the ruling upon special exceptions to certain prayers of plaintiff for want of evidence to support them, and one to the granting of certain prayers of plaintiff, and the rejection of certain prayers of defendants. The first and second exceptions present closely analogous questions. Plaintiff, as a witness, had described the circumstances which led to and characterized the assault, testifying that he had entered the building in a quiet and orderly manner to inquire about a car he had ordered; that Robert Sellman said plaintiff had ordered no car, and he replied that he had, but that Sellman had taken it for his own use; and that Sellman said he was " a damn liar and thief; " that at that time Alonzo B. Sellman, the postmaster, son of Robert Sellman, came in, and Robert Sellman said: " Throw the damn thief out," and Alonzo Sellman seized him by the back of the neck and the bottom of his pants or by the suspenders, and he was thrown out from a porch eight or nine feet wide, and five feet high, to the ground. He further testified, subject to exception, that while being carried across the porch he had an aching and burning sensation in his left testi-

cle, which pain had continued ever since. He further testified that a short time after the assault, he left the place, and said, " I then went up the road through a woods of mine, and when I got in the woods I looked at my testicle and found a red stripe over it, and it was very much swollen, and two or three weeks after that I found an injury there, and I went to Baltimore and had it taken out. Question. How did this injury that you speak of affect you ? Answer. It made me very nervous and I could not sleep at night, and when I went to stoop over to do anything, I had great pain. Question. What is your condition at present ? Answer. My condition at present is that I suffer a great deal from the pain from the testicle going along the chord into my stomach."

The defendants moved to strike out the testimony above embraced in quotation marks, and the first exception was taken to the refusal to strike this out.

In support of this exception defendants rely upon the rule that the opinions of non-expert witnesses are not evidence, and they argue that the testimony objected to is merely the opinion or inference of the plaintiff. They admit that he can testify as to his condition before and after the injury, in order that from these facts, the jury may form its opinion and draw its inferences as to the cause of the injury, but they say to ask the witness, "how did this injury which you speak of affect you," is to ask the very question the jury had to decide ; and that to permit the witness to answer "It made me nervous, &c.," is to give probative force to the mere inferences of the witness as to the cause of the injury. It certainly cannot be seriously contended that the rule invoked excludes that part of the testimony objected to, which precedes the question as to how the injury affected him, since that is a simple description of his physical condition, and of facts which he knew. *City Pass. Ry. Co. v. Nugent*, 86 Md. 360. Nor do we perceive any valid objection to the two following questions and the answers thereto. Each of these questions called for the statement of facts only, descriptive of his physical condition to which he was certainly competent to testify, and the answers contained nothing but such statements of

facts.  Neither the questions nor the answers dealt with the *cause* of the injury.  That related exclusively to its *effect.* The Maryland cases cited by the appellants upon this point have no pertinency to the question here, nor does the language of LORD MANSFIELD in *Carter* v. *Boehm*, 3 Burr. 1918, quoted upon their brief, have any greater pertinency, when the case is examined.  That case concerned an insurance effected through a broker, who testified "that he did not *believe* the insured would have meddled with the insurance if he had seen certain letters" in evidence and it was of this "*belief*" that the Court said : "It is an opinion which if rightly formed could only be drawn from the same premises from which the Court and the jury were to determine the cause, and therefore it is improper and irrelevant in the mouth of a witness."   We find no error in this ruling.

Dr. Joseph Hering, a practicing physician, then testified that plaintiff came to him in December, the assault having been in September, and further testified, subject to exception, as follows : "I examined Mr. Wheeler who came to me complaining of a pain in his testicle.   I found him to be suffering with an enlargement about the testicle.   I suggested some treatment for him, and that if it continued he would have to go to the hospital and have an operation performed.   I did not thoroughly diagnose the exact condition, but there was an enlargement of the left testicle.   I next emamined Mr. Wheeler yesterday morning, and saw that an operation had been performed, from a scar."   Upon cross-examination, Dr. Hering testified : "I know nothing of the cause of the trouble."

The second exception was taken to the refusal of the Court to strike out this testimony.   The ground of the objection is that this testimony was immaterial, irrelevant, and hearsay. But if Dr. Hering had not been sworn it would have been a legitimate argument to the jury that the plaintiff had failed to produce the best available evidence of the character and extent of his injury.   Upon that point therefore his testimony cannot be either immaterial or irrelevant.   Nor is it hearsay. Mr. Greenleaf says, vol. 1, sec. 102, 14th ed:   "The representations by a sick person of the nature, symptoms and effects of the malady under which he is suffering at the time, are

original evidence. If made to a medical attendant they are of greater weight as evidence, but if made to any other person they are not on that account rejected." In *Fleming* v. *Springfield*, 154 Mass. 520, it was held that a statement by plaintiff in an action for personal injuries made to his physician as to his symptoms at the time, if made for the purpose of medical treatment and advice, is admissible in his favor, though the interview was only a day or two before, or possibly during the trial. And in *N. P. R. R.* v. *Urlin*, 158 U. S. 275, the text of Greenleaf and the case just cited are approved. It will be observed that the only statement made by plaintiff to Dr. Hering was of his suffering at the time, though it was held in *Roosa* v. *Boston Loan Co.*, 132 Mass. 439, that a physician may testify to a statement or narrative given by his patient in relation to his condition, symptoms, sensation and feelings *both past and present*, and that these are admitted from necessity, because in this way only can the bodily condition of the party be ascertained. We are not required, however, to go to that extent here. It was also held in that case, and we think properly that this does not extend to the patient's declaration of the cause of the injury. In the case before us there was no such declaration by plaintiff, and Dr. Hering expressly testified that he knew nothing of the cause. We think this ruling of the Court was correct.

The third exception was to the overruling of the special exceptions to the plaintiff's eighth prayer as modified by the Court, for the reason that the evidence does not support the prayer. We think there is ample evidence to support this prayer, which lays down 'the rule for assessing damages, so familiar in cases of this character. Five reasons are assigned in support of the special exception. Of these the first and second fail to specify the particulars in which the proof is supposed to be defective, and need not therefore be considered. The third alleges there is no evidence that the plaintiff was disabled or unfitted for pursuing his ordinary occupations. The fourth that there is no evidence to show that the injury complained of resulted from the alleged assault, and the fifth that there is no evidence that the medical attention and the operation was necessitated by the alleged assault. Wheeler

testified that he had been telegraph operator at Watersville for seventeen years, that he was at the time of the assault engaged in handling and shipping baled hay; that on the day following he was obliged to suspend this work and lie down most of the day; that from October following the assault in September, until May, he had not been able to do any manual work, and that when testifying, May 16th, he suffered a great deal of pain from the testicle. Also that for the first time in his service there had been complaints about his work as operator. His own testimony shows that the pain in the testicle began with the assault and continued up to the time of the trial. Dr. Hering's testimony was that if the enlargement continued an operation would be necessary, and that on his subsequent examination he saw one had been performed. We are not concerned with the weight of this testimony which is always for the jury, but it certainly tends to show that the alleged assault might have been the cause of the injury, that the medical and surgical attention was made necessary thereby, and that his capacity for manual labor and his efficiency as a teleegraph operator might be diminished thereby. If there was any evidence of any other cause to which the injury could be rationally attributed—or if they thought all the plaintiff's testimony unworthy of belief, the jury could have so indicated by a verdict for defendant; but in the face of the testimony we have mentioned the Court could not properly have sustained this special exception.

Plaintiff and defendant each offered eight prayers. Of these the plaintiff's 7th prayer was granted as offered—the 8th was modified and so granted, and the 3rd was modified and so granted in connection with defendant's 4th prayer.

Of defendant's prayers, the 3rd and 4th were granted, and all the others were rejected. The fourth exception was taken to these rulings upon the prayers. It follows from what we have said in reference to the special exception to the plaintiff's eight prayer as modified, that we think it was correctly granted, it having been too often approved by this Court, when supported by legally sufficient evidence, to require any citation of authorities.

Plaintiff's seventh prayer instructed the jury that the burden

of proof was on defendants to show by preponderance of evidence all the matters alleged in their pleas of confession and avoidance, and it was correctly granted. The rule has been well stated in *Blake* v. *Damon*, 103 Mass. 199, thus: "If plaintiff alleges acts which if proved, and not justified, will sustain his action, and the defendant seeks to justify them, the burden is upon him to prove his justification." And this rule was well illustrated in *St. John* v. *Eastern R. W.*, 1st Allen, 574, where it was said: "Where plaintiff was a passenger on a railroad, and defendant by its agents assaulted him, if the assault is proved, the burden of justifying it rests upon the defendant *as in ordinary cases.*"

Upon the same principle defendant's third prayer relating to the burden of proof on plaintiff to establish the assault and the resulting injury was properly granted. The defendant's first prayer asked that the jury be instructed that there was no evidence legally sufficient to entitle the plaintiff to recover under the pleadings as against Robert Sellman. This is upon the theory that Alonzo B. Sellman, as postmaster, ejected the plaintiff, as authorized by the postal laws and regulations read in evidence, and that in this act of expulsion Robert Sellman did not participate directly or indirectly, and he therefore incurred no liability even if undue force was used by Alonzo Sellman. But this would ignore the plaintiff's testimony that the difficulty originated with Robert Sellman who cursed him and called him a liar and a thief when he came to see England about the car he had ordered, that as soon as Alonzo Sellman appeared upon the scene Robert Sellman called to throw plaintiff out, which was immediately done by Alonzo B. Sellman. If the jury believed this testimony, Robert and Alonzo Sellman were jointly liable for the wrong done, and this prayer therefore was properly refused.

The defendant's third prayer, as modified and granted, covers everything properly embraced in the second prayer, and there was no error in the rejection of the second prayer for this reason. Moreover, the attempt to distinguish in the second prayer between damages which would, and those which would not, entitle the plaintiff to a verdict, was sufficient to justify its rejection. The plaintiff's third prayer, as modified

by the Court, was granted in connection with defendant's fourth prayer, the Court endorsing on the plaintiff's third prayer an instruction that it was to be read in connection with defendant's fourth prayer, and these prayers we think fairly and fully covered the law of the case. The plaintiff's third prayer requires the jury to find all the facts necessary to constitute an assault by both defendants. The authorities abundantly support the proposition that all persons actually present aiding, abetting or counselling an assault, are guilty, as principals. Thus in *Com. v. Hurley*, 99 Mass. 433, it was held that evidence that one of a noisy crowd near a policeman cried out "kill him," about the time when others knocked the officer down, was sufficient to convict of an assault upon the officer.

Defendant's fourth prayer set forth all the facts of justification, which if found by the jury would relieve the defendants from legal liability. These two prayers, taken together, as required by the instruction to that effect, were in substance a direction that notwithstanding the jury upon the plaintiff's evidence might find an assault by the defendants, yet if upon defendant's evidence they should find the assault justified, their verdict must be for defendants. Or in other words that if they found the facts stated in the third prayer, they must give a verdict for the plaintiff, *unless* they found the additional facts stated in the fourth prayer, in which event they must render a verdict for the defendants, and it is not possible to suppose that the jury could have been in any way misled or confused by such instructions. This practice has been frequently approved, as in *Deford* v. *Dryden*, 46 Md. 256, and in *Garey* v. *Sangston*, 64 Md. 38. Under these instructions the jury could determine from all the evidence, whether the plaintiff was ejected without undue violence, in a *bona fide* attempt by Alonzo Sellman to exercise his lawful authority as postmaster, or whether the defendants intended from the first to commit a wrong, with the purpose then, or subsequently formed, to set up Alonzo Sellman's legal authority as postmaster as a cover for their joint illegal conduct. *Taylor* v. *Jones*, 42 N. H. 35.

Defendant's 5th, 6th and 7th prayers contain no proposition

of law which was not embraced in their fourth prayer, and the Court cannot be required to repeat and reproduce the same legal proposition with a mere difference of phraseology. Such practice has been condemned as tending to confusion and uncertainty, in *Green Ridge R. R.* v. *Brinkman,* 64 Md. 61, and in *Spencer* v. *Trafford,* 42 Md. 21.

It follows from what we have said in regard to the first and second exceptions that there was no error in rejecting defendant's eighth prayer which asserts that there was no legally sufficient evidence to show that the necessity for the operation upon plaintiff was the result of his ejection from the store by defendants. Finding no error in any of the rulings, the judgment will be affirmed.

Opinion by PEARCE, J., filed November 20th, 1902.

*Jas. A. C. Bond* and *F. Neal Parke,* for the appellant.
*Guy W. Steele,* for the appellee.