GEORGE W. EDGER *vs.* EUGENE BURKE AND EDWARD STEWART.

*False Imprisonment—Arrest Without Warrant for Suspected Felony by Peace Officer—Plea of Justification—Reasonable Ground of Suspicion—Burden of Proof—Handcuffing Prisoner.*

A peace officer, such as a deputy sheriff, is authorized to arrest, without a warrant, a person whom he has reasonable ground to believe guilty of a felony, and carry such person before a magistrate, who is empowered to examine and commit or discharge; and the officer so taking into custody the suspected person is not liable to an action for false arrest although in fact no felony had been committed.

In an action for false arrest and imprisonment, a plea of justification should set forth the facts constituting the justification relied on so that the plaintiff may be apprised of them and the Court be enabled to judge of their sufficiency.

But when a demurrer to a plea of justification, which does not set out the facts relating thereto, has been overruled and issues joined, and at the trial full proof was made of the facts showing justification, then the overruling of the demurrer is not reversible error on appeal from the final judgment.

When a deputy sheriff is informed by a woman that a felonious assault was made upon her by a man whom she describes and the sheriff believes her to be truthful and her statements are apparently corroborated by his own investigation, the sheriff is justified in arresting without

warrant the designated man and taking him before a magistrate, and the party arrested has no cause of action against the sheriff, although it be shown afterwards that he was innocent.

In an action for false arrest where the defendant pleads justification the burden is upon him to prove reasonable ground of suspicion that the plaintiff was guilty of the crime for which he was taken into custody.

The mere fact that the officer making an arrest for suspected felony, put handcuffs on the prisoner is not such unnecessary violence as entitles the plaintiff to recover punitive damages.

When a deputy sheriff summons a citizen to assist him in making an arrest for suspected felony, no action for false arrest can be maintained against such citizen if he responded in good faith to the call of the sheriff and kept within his directions.

Appeal from the Circuit Court of Harford County, (WATTERS, J.

*Plaintiff's 1st Prayer.*—If the jury shall find from the evidence that the plaintiff George W. Edger was arrested by the defendant on the 10th day of January, 1901, without a warrant issued by an officer having competent authority to issue any such warrant and that the plaintiff was not arrested in the commission of any crime, and subsequently detained against his will then the verdict must be for the plaintiff. (*Rejected.*)

*Plaintiff's 2nd Prayer.*—If the jury shall find that the plaintiff was arrested without a warrant by the defendants on the 10th of January, 1901, upon the suspicion and information of .Eliza Preston that an assault and rape had been committed upon her body on the 8th of January, 1901, and that a party who said he lived in the Henrietta house was guilty of such offense, and the defendants did not make such inquiries into the circumstances as would have confirmed in the mind of a reasonable and cautious man the suspicion that the plaintiff was the assailant, then such suspicion and information received from Eliza Preston are not sufficient to constitute reasonable ground of suspicion for the arrest of the plaintiff, and the verdict must be for the plaintiff. (*Rejected.*)

*Plaintiff's 3rd Prayer.*—If the jury shall find from the evidence that the plaintiff was arrested by the defendants without

a warrant on the 10th of January, 1901, on the charge of feloniously assaulting and committing a rape on the body of Eliza Preston and shall find that there were circumstances of suspicion in the minds of the defendants that a felonious assault and rape had been committed on the body of Eliza Preston and that the plaintiff had committed such crime, and that such circumstances of suspicion might have been readily removed or explained by reasonable inquiry such as a prudent and cautious man would have made, and there was no such inquiry made, then there was no reasonable ground of suspicion upon which to arrest the plaintiff and the verdict must be for the plaintiff.   (*Rejected.*)

*Plaintiff's 4th Prayer.*—If the jury shall find from the evidence that the plaintiff was arrested without a warrant by the defendant on the 10th day of January, 1901, upon the statement of Eliza Preston made to one of the defendants, Eugene Burke, that a felonious assault and rape had been committed upon her body on the 8th day of January, 1901, by a man who said he lived in the Henrietta house ; that said Eliza Preston said she believed her assailant was the man who hauled fodder past the road in front of said Burke's house and passed there the previous Sunday, and that said Burke knew that Eliza Preston did not know the plaintiff but had only seen him passing by the road, that said Eliza Preston did not attempt to identify the plaintiff until after his arrest, that said Eugene Burke knew that Eliza Preston was not bright, that the plaintiff and his mother stated to the defendants before the arrest that he, the plaintiff, had not been off his place since the Sunday preceding, that said defendants did not either before seeing or before arresting the plaintiff make such inquiries and investigation as would have been made under the circumstances by a reasonable and cautious man, then there was no reasonable ground of suspicion upon which to arrest the plaintiff and the verdict must be for the plaintiff.

(*Rejected.*)

*Plaintiff's 5th Prayer.*—The burden is upon the defendants to prove reasonable ground of suspicion that a felonious as-

sault and rape had been committed on the body of Eliza Preston, and to further prove in mitigation of damages probable cause for arresting the plaintiff on the charge of committing such offense. (*Rejected.*)

*Plaintiff's 6th Prayer.*—If the jury shall find for the plaintiff, they are at liberty to take into consideration all the circumstances of the case and award such damages as will not only compensate the plaintiff for the wrong and indignity he has sustained in consequence of the defendants wrongful acts, but may also award exemplary or punitive damages as a punishment to the defendants for such wrongful acts. (*Rejected.*)

*Plaintiff's 7th Prayer.*—If the jury shall find for the plaintiff and shall find that the defendants used unnecessary and brutal force in arresting the plaintiff and that the defendants needlessly handcuffed the plaintiff and the defendants offered the indignity of taking the plaintiff into custody in the presence of his aged mother and that the plaintiff was lodged in the common jail at Towson and languished therein for twenty-six hours and was released without any hearing the jury may in assessing damages take into consideration any or all of such facts as may be found. (*Rejected.*)

*Defendants' 1st Prayer.*—If the jury find from the evidence that Eugene Burke, one of the defendants in this case, was at the time complained of in the plaintiff's declaration, deputy sheriff of Baltimore County, and that on the morning of January 10th, 1901, he received from Eliza Preston, whom he had known for a long time and who he believed was a truthful and reliable person, information that a felonious assault had been perpetrated on her on the 8th day of January by a man who then lived in a house in the neighborhood, known as the Henrietta house, that he was the same man who had a short time before been hauling fodder along the road in front of Burke's residence and that he was the same man who on the Sunday before had passed Burke's residence on his way to the residence of a Mr. Simms, and shall further find that Burke knew the plaintiff lived in the Henrietta house, that he had hauled fodder along the road in front of his residence a

short time before and that he ascertained from the plaintiff be-
fore the arrest that he had passed his residence the Sunday
before on his way to visit Mr. Simms, and that it was upon
this information that the defendant Burke, as deputy sheriff,
made the arrest and immediately took the plaintiff before
Eliza Preston, who identified him as the man who had feloni-
ously assaulted her and that he had then immediately taken
the plaintiff before Justice Herbert who issued a warrant for
plaintiff's arrest and a committment for him to be held
for a hearing, that these said facts created a reasonable
ground of suspicion and were sufficient to justify the de-
fendant Burke, in making said arrest without a warrant
therefor, and the verdict of the jury under the issue joined
upon the second plea must be for the defendant Burke.
(*Granted.*)

*Defendants' 2nd Prayer.*—The Court instructs the jury that
if they find from the evidence the facts contained in defend-
ants' first prayer, and further finds that the defendant, Edward
Stewart, was summoned and deputized by Eugene Burke, the
deputy sheriff of Baltimore County, to aid him in making the
arrest complained of, and did so aid him, then their verdict
must under the issue joined upon his second plea be for the
defendant Stewart.  (*Granted.*)

The cause was submitted to the Court on briefs by :

*Harison J. Barrett, Allan C. Girdwood* and *Robt. H. Wil-
liams,* for the appellant.

*Frank I. Duncan, John Grason* and *Geo. L. Van Bibber,* for
the appellees.

PEARCE, J., delivered the opinion of the Court.

This is an action brought on May 22nd, 1901, by George
W. Edger against Eugene Burke and Edward Stewart for false
arrest and imprisonment.   Burke was at that time, and still is,
deputy sheriff of Baltimore County where the crime was com-
mitted, and Stewart was a citizen summoned by Burke to aid
in the arrest, which was made without a warrant.

The facts, as disclosed by the record, show that Burke was an experienced officer, having filled the position for eleven consecutive years ; that on the evening of January 8th, 1901, he and his wife returned from Baltimore to their home, which had been left in charge of a colored woman about sixty years of age, who had lived in his family for four years, and in his wife's family for many years, and who was thoroughly truthful and trustworthy, though not very bright ; that on their return he left his wife at the door of the house and drove to the stable to put up his horse, and on reaching the house heard some one crying, and called his wife to inquire into the cause, and she said "Eliza was crying and carrying on ;" that her clothes were torn nearly off, but that she could not find out what was the matter, but that next morning, *after he left home*, Eliza gave to his wife an account, which she communierted to him on his return at night, and that *on the following morning* Eliza repeated to him the account as follows :   That about one o'clock, of the day of their absence, she answered a knock at the door, and found a man standing there ; that he asked if Mr. or Mrs. Burke were at home, and being informed neither one was at home, said that he had been at the Simms' place on Sunday, and Simms told him that place was for rent, and he wanted to see it, to which she replied that no one was at home, and he could not see it ; that he said he lived in the Henrietta house near by, and knew Mr. and Mrs. Burke, and wanted to go up stairs and see the house, but she refused to allow it, when he put his foot within the door, so that she could not shut it ; that just then Mr. Fastey's carriage was passing on the road, and that when the carriage went down the hill, he forced himself into the house, threw her down upon the corner of the stairway and committed a rape upon her person ; that he said he lived in the Henrietta house, and she said that he was the same person she had seen hauling fodder from Mr. Hermans.   Burke testified that he knew the plaintiff lived in the Henrietta house, and that he had hauled the fodder from Mr. Hermans, though he had no personal acquaintance with him, and only knew him by sight ; that on re-

ceiving Eliza's account, he summoned Stewart to go with him
as a depnty, and they went to Edger's house and found him
at home ; that he asked Edger if he was looking for a house
to rent, and he said he was ; that he also asked him if he had
been to Simms' place on Sunday, and he said he had ; that he
then told plaintiff he had information a crime had been com-
mitted, and he must arrest him ; that he did then arrest him,
handcuffed, and drove him in a carriage to Burke's house, and
called Eliza out to see him ; that she came, looked into the
carriage, and said "that is the man, but he hasn't on his spec-
tacles, nor the same hat, but that is the man ;" that he then
took him to Towson, saw the State's Attorney, and on his ad-
vice swore out a warrant, and plaintiff was committed for a
hearing ; that next day he was thinking about the case, and
he went to see Mr. Fastey and stated the case to him, and he
said, "Eugene, you have got the wrong man.   There was a
man on your porch, and I had been talking with him, and
while he is a similar looking man, and a good many people
would take him for Mr. Edger, you have got the wrong man;"
that he then drove at once to Towson, withdrew the charge,
and drove Edger home.   It was also shown that when plain-
tiff was arrested, he asked the charge and was told he would
find out soon enough.

   There was a demurrer to each count of the declaration ex-
cept the first, but this was overruled, and no question was
made as to this in the briefs on which the case was submitted.
Burke pleaded first, that he did not commit the wrong alleged,
and second, that at the time of the assault and arrest com-
plained of he was a deputy Sheriff of Baltimore County, and
that being informed, and having reasonable cause to believe,
that the plaintiff had committed a felonious assault upon one
Eliza Preston in Baltimore County, he, in the discharge of
his duty as Deputy Sheriff arrested the plaintiff and carried
him before a Justice of the Peace for Baltimore County who
duly committed him to the custody of the Sheriff of said
county.

   Stewart pleaded first, that he did not commit the wrong

alleged, and second, that he was a citizen of Baltimore County, and as such was summoned and deputized by Eugene Burke, a Deputy Sheriff of said county to assist him in making the arrest of the plaintiff upon a charge of felonious assault upon one Eliza Preston, and that what he did was by virtue of being thus deputized.

There was a demurrer to the second plea of each defendant, which was overruled, after which issue was joined on all the pleas, and the case went to trial before a jury. At the close of the testimony on both sides the plaintiff offered seven prayers, all of which were rejected, and the defendants offered two, both of which were granted, to which rulings the plaintiff excepted, and the verdict and judgment being against him, he has brought this appeal.

The demurrer to the special pleas will be first considered. In 2 *Addison on Torts*, p. 150, 7th ed., it is said: "A constable or sheriff, having reasonable ground to suspect that a felony has been committed, although in fact none has been, is authorized to detain the person suspected (not being an infant under the age of seven years, incapable of committing a felony,) until he can be brought before a Justice of the Peace to have his conduct investigated." In *Samuel* v. *Payne*, 1 Douglas, 359, LORD MANSFIELD said: "If one man charges another with felony and requires an officer to take him into custody and carry him before a magistrate, it would be most mischievous that the officer should be bound first to try, and, at his peril, exercise his judgment on the truth of the charge. The officer does his duty in carrying the accused before a magistrate who is authorized to examine, and commit or discharge." And in *Davis* v. *Russell*, 2 Moore & Payne, 590 CHIEF JUSTICE BEST stating this rule, said: "This has been decided so often that it is unnecessary to refer to cases on the subject." The absence of a warrant for the arrest, therefore, is no ground of demurrer. But it is contended that both these special pleas are defective in failing to set out the facts and circumstances constituting the justification pleaded, so that the plaintiff may be apprised of these facts and circum-

stances, and the Court may judge of their sufficiency, and *so far as this relates to the plea of Burke,* we think the objection is well taken. This is the rule laid down in the leading case of *Mure* v. *Kaye,* 4 Taunton 34, and is the rule recognized in 1 *Chitty's Pleading,* 16th ed. 258; *Stephen on Pleading,* 5th ed. 356; 1 *Tidds Practice,* 653; 8 *Enc. Pleading & Practice,* 850. It was so held in *Perryman* v. *Lister,* L. R. 3 Exch. 179; in *Wade* v. *Chaffee,* 8th R. I. 224; *Spencer* v. *Anness,* 3 Vroom, 100; *Wasson* v. *Canfield,* 6 Blackford (Ind.) 406; *White* v. *McQueen,* 96 Mich. 249, and *Bean* v. *Beckwith,* 18 Wall. 510. In the last mentioned case JUSTICE FIELD says: "This is an old rule of pleading, which in the modern progress of sim̶plyfying pleadings has not lost its virtue." In *Hamilton* v. *Conine,* 28 Md. 646, referring to the legislation in this State simplyfying the forms of pleadings, JUDGE MILLER, citing *Stirling* v. *Garritee,* 18 Md. 468, said: "The substantial principles underlying our system of jurisprudence, and, to some extent governing the forms of action must still be recognized, however the form may be changed or simplified." This language is as logically and justly applicable to the substance of a pleading, as to the form of an action, and Mr. Poe seems so to regard it in sec. 732 of his work on Pleading. Evidence of justification would not have been receivable under the general issue plea. If therefore the plaintiff had stood upon the demurrer and allowed judgment to be entered for the defendant Burke, it would have been necessary to reverse such judgment. But having pleaded over, and full proof having been made of the justification pleaded, as will hereafter be shown, there was no reversible error in that ruling.

It follows from what we have heretofore said that the plaintiff's first prayer which relies solely upon the absence of a warrant was properly rejected. The 2nd, 3rd and 4th prayers of the plaintiff, and the first prayer of the defendant raise the question of reasonable grounds of belief that a felony had been committed, and that the plaintiff was the guilty person. The authorities all agree that it is for the jury to find the facts which are supposed to constitute probable cause, and to draw

their conclusions from these facts under the instructions of the Court. *Davis* v. *Russell, supra; Kirk* v. *Garrett*, 84 Md. 405, in which this Court said "It is wholly immaterial whether the suspicion arises out of information imparted to the constable by some one else, or whether it is founded on the officer's own knowledge. In either event, what amounts to a sufficient ground of suspicion to justify an arrest by a constable without a warrant, is for the Court and not for the jury to determine."

The plaintiff's 2nd, 3rd and 4th prayers seem to have been framed with the purpose of bringing them within the definition of probable cause given by JUDGE WASHINGTON in *Munns* v. *Dupont*, 3 Wash. C. C. Reps. 31, adopted by this Court, and approved by it in numerous cases, but there are several good reasons for their rejection.

The second prayer would enable the jury to find that the arrest was founded upon *suspicion* engendered in Burke's mind by *suspicion* in Eliza Preston's mind, whereas his *belief* that a felony had been committed was founded upon positive and definite *information* from her, and his suspicion that the plaintiff was the guilty party was founded upon facts stated by her, and apparently corroborated by the plaintiff himself upon inquiry by Burke ; and to have granted this prayer would have been serious error.

In reference to the third and fourth prayers, it is said in *Pollock on Torts*, pages 192, 193 : "It does not follow because it would be very reasonable to make further inquiry, that it is not reasononable to act without doing so. It is obvious also that the existence or non-existence of reasonable cause must be judged, not by the event, but by the party's means of knowledge at the time." And in *Central Railway Co.* v. *Brewer*, 78 Md. 394, this Court said : "We do not sanction the idea that the rights and liabilities of the citizen can be trifled with, and unfounded charges preferred without holding the accuser to a just responsibility, * * * But if a person act upon appearances in making a criminal charge, and the apparent facts are such as to lead a discreet and prudent

person to believe that a crime has been committed by the party charged, although it turns out that he was deceived, and the party accused was innocent, yet he will be justified." In *Filer* v. *Smith*, 96 Mich. 347, the Court said, that where such an investigation was made into the facts and circumstances as the particular case admitted, the officer would not be liable to one who turns out to be innocent, adding, "The law encourages every one, as well private citizens as officers, to keep a sharp lookout for the apprehension of felons, by holding them exempt from responsibility for an arrest or apprehension, although the party charged turns out not to be guilty, unless the arrest is made or the prosecution is instituted without probable cause and from malice." And in *Brockway* v. *Crawford*, 3 Jones, N. C. Law 434, where the chief ground for probable cause was the strong resemblance of the party arrested to the person suspected, who in fact had disappeared, CHIEF JUSTICE PEARSON said : "What has the plaintiff, if he be a good citizen, to complain of ? A felony is committed and the felon escapes * * * The plaintiff bears a close resemblance both in dress and personal appearance to the suspected person. His fixedness in his position as a member of the community does not place him above the marks of honest suspicion as the man who figures as a fugitive from justice. Has he cause to complain ? Ought he not rather to congratulate himself that he lives in a land where justice is administered with a steady hand ? and if occasionally 'the wrong passenger is waked up' every good citizen should bear in mind that it was meant for the best, and will work around for the good of the whole." This language may perhaps be regarded as somewhat freer than is usual in judicial opinions, but its reasoning is sound and strong. Applying the principles of the cases cited to the plaintiff's third and fourth prayers and to defendants' first prayer, there can be no difficulty in determining that the former were properly rejected, and that the latter, which sets out fully and clearly all the facts constituting the grounds of suspicion and belief, was correctly granted.

Coming to the plaintiff's fifth prayer, we think the burden of proof was upon Burke to prove the facts alleged in justification, as was held in *Blake* v. *Damon*, 103 Mass. 199, approved in *Sellman* v. *Wheeler*, decided in this Court November 20th, 1902 (95 Md. 751.) But this burden was fully met in the proof, and the plaintiff suffered no injury from the rejection of the prayer.

There was no evidence legally sufficient to warrant giving punitive damages, and for that reason the sixth prayer was properly rejected.

The 7th prayer requires the jury to find that defendants used unnecessary and brutal force in arresting the plaintiff, of which there was not a particle of evidence, unless the use of handcuffs constituted such brutal force ; but as was said in *Fire-stone* v. *Rice*, 71 Mich. 377 : "Some discretion must be reposed in an officer making an arrest for felony, as to the means taken to apprehend and safely keep the prisoner. In order to justify handcuffing a prisoner arrested for felony, it is not necessary that he should be unruly, or attempt to escape, or do anything indicating a necessity for such restraint, nor in the absence of these indications, that he should be of notoriously bad character." This prayer was properly rejected.

Another objection to all the plaintiff's prayers, and which alone would have justified their rejection, is that they make no discrimination between the liability of Burke and Stewart. We have said Stewart would not be liable in any event if he responded in good faith to the call of Burke, and kept within his orders and directions.

The defendant's second prayer goes further than the circumstances of this case demand, in requiring the jury to find all the facts set forth in plaintiff's first prayer, before Stewart could be exonerated from liability, and the granting of that prayer is not the subject of complaint by the plaintiff.

There is nothing in the record to show that the failure of Burke to, set out in his plea all the facts and circumstances constituting probable cause, worked any surprise, or caused any injury to the plaintiff; and there is no suggestion of such

surprise or injury in his counsel's brief. The facts and cir-
cumstances showing justification were fully proved, and the
Court could judge of their sufficiency as well, indeed better,
after proof, upon instructions offered, than upon demurrer if
they had been set out in the plea. If this had been done, and
a demurrer had been interposed, it must have been overruled,
and it is therefore obvious that the judgment should not be
reversed for technical error without injury.

*Judgment affirmed with costs above and
below.*

(Decided March 31st, 1903.)