AMERICAN STEEL & WIRE CO. OF NEW JERSEY v. DAVIS, Mayor, et al.

(District Court, N. D. Ohio. December 17, 1919.)

No. 512.

1. ARREST ⟨⟫63(1)—INJUNCTION ⟨⟫77(2)—UNLAWFUL ARRESTS.

Action by the mayor and chief of police of a city, pursuant to a publicly announced intention to arrest every person coming to the city to take employment in steel mills during a strike of their former employés, and carried out by causing wholesale arrests at incoming trains, without warrant or charge, of persons of respectable appearance and behavior, and marching them to police stations, where they were detained under pretense of investigation, and in many cases sent out of the city under police guard, without any charge having been made against them, *held* unlawful, and enjoined, where its effect was to prevent a large number of the persons so arrested from entering the employment for which some of them had contracted.

2. ARREST ⟨⟫63(3, 4)—AUTHORITY TO ARREST WITHOUT WARRANT.

Arrest without warrant may lawfully be made in case of felony only when the arresting officer has information or knowledge of facts reasonably calculated to induce a belief that a felony has been committed and that the person thus arrested without warrant is guilty of having committed it, and in case of misdemeanor only when committed in view of the peace officer making the arrest.

3. INJUNCTION ⟨⟫77(2)—AGAINST POLICE OFFICERS; RESTRAINING UNLAWFUL ARRESTS.

The power to preserve the public peace and to arrest and prosecute persons for crime cannot be made to support action depriving persons of their constitutional right to employ others, or to enter into employment, and injunction will lie to restrain police and other officers, when thus acting beyond lawful power.

---

⟨⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the American Steel & Wire Company of New Jersey against Harry L. Davis, individually and as Mayor of the City of Cleveland, Ohio, and Frank W. Smith, individually and as Chief of Police of the City of Cleveland. On motion for preliminary injunction. Injunction granted.

Squire, Sanders & Dempsey, of Cleveland, Ohio, for plaintiff.
Day, Day & Wilkin, of Cleveland, Ohio, for defendants.

WESTENHAVER, District Judge. The plaintiff, a citizen of the state of New Jersey, brings this action against the defendants, citizens of the state of Ohio, to obtain a preliminary injunction. The case was fully heard upon amended bill, answer, and affidavits, and was argued orally and in briefs. Upon consideration thereof I am of opinion that a preliminary injunction as prayed should issue. The necessity for a prompt decision and the press of other matters prevent the preparation of an extended opinion. The reasons, however, for my conclusion will be adequately understood from the following observations.

[1] The plaintiff, the American Steel & Wire Company, operates in Cleveland and in Cuyahoga county seven plants for the manufacture of iron and steel products. It employs in these plants over 11,000 men. On September 22, 1919, a strike was declared by some of its employés in all these several plants, which strike has not as yet been settled, and, as a result thereof, the plaintiff has been and still is in need of additional men to carry on its business.

In order to obtain such men it has from time to time at great expense sought and procured persons not resident of the city of Cleveland, who have agreed to work in its several plants, and has, at its own expense, transported them from their several places of residence to Cleveland. A part of the terms of employment of all or some of these men is that the plaintiff will not only pay their transportation to Cleveland, but will pay their transportation back again to the former residence in the event any of them are dissatisfied with the positions to which they are assigned or the conditions of the employment on arrival at the plant.

All persons so engaged by the plaintiff, the affidavits show, have been American citizens and men of good character and habits. A careful scrutiny of defendants' affidavits fails to disclose any evidence to the contrary. In my opinion, however, the citizenship of the persons thus engaged is not a material circumstance. The law would be the same if they were any persons entitled to the privileges and immunities accorded to citizens of the United States, including aliens lawfully admitted, pursuant to treaty and the immigration laws.

The police force of the city of Cleveland, acting under the direction of the defendants, Harry L. Davis, mayor, and Frank W. Smith, chief of police, has, beginning shortly after the declaration of the strike, pursued a policy of arresting all persons thus brought to the city of Cleveland from outside the city to work in any of the plaintiff's plants. For this purpose police officers in uniform have met incoming trains and have even boarded trains outside the city limits.

261 F.—51

All such persons have been arrested without warrant and without any reasonable grounds to believe that they had committed felonies, and without finding any of them, at the time of such arrest, violating any penal statute of the United States or of Ohio or ordinance of the city of Cleveland.

This statement of facts is not in dispute. Defendants' affidavits call this procedure "detaining for investigation," and assert that all persons thus detained and investigated and not found, as a result of such investigation, to be properly guilty of a crime, or of violating any penal statute or any ordinance of the city, are released. The fact, however, is that all such persons are taken into custody on their arrival at the railroad station, and are taken thence either in an emergency police patrol wagon or in the custody of policemen, to some precinct station or to Central police station.

They are there enrolled and an inquiry made into their past history and occupation. Some affidavits show that they have been locked, if not in cells, in rooms at police stations from which escape was not possible. This is in law arresting each and every such person at the railroad station and keeping him under arrest until thus released.

It was not seriously contended before me that this procedure is legal. The law to the contrary is well settled. Ballard v. State, 43 Ohio St. 340, 1 N. E. 76; State v. Lewis, 50 Ohio St. 179, 33 N. E. 405, 19 L. R. A. 449; Kurtz v. Moffitt, 115 U. S. 487, 6 Sup. Ct. 148, 29 L. Ed. 458; John Bad Elk v. United States, 177 U. S. 529, 20 Sup. Ct. 729, 44 L. Ed. 874; Pritchett v. Sullivan, 182 Fed. 480, 104 C. C. A. 624. The law as thus settled is that police officers may not lawfully arrest and detain any one without a warrant regularly issued, except under certain definite conditions.

[2] In cases of felony arrest may be made without a warrant only when the arresting officer has information or knowledge of facts reasonably calculated to induce a belief that a felony has been committed and that the person thus arrested without warrant is guilty of having committed it. In cases of misdemeanors a warrant is always required, except when committed in view of the peace officer making the arrest.

The so-called "suspicious person" ordinance of the city of Cleveland confers no authority in conflict with those settled rules of law. It follows then that the procedure pursued by defendant is illegal and that if a violation of plaintiff's rights results therefrom that an injunction should issue.

The affidavits show that on November 22, 1919, 25 men under contract with the plaintiff were thus arrested; that on November 29, 1919, 22 men were thus arrested, and that on December 3, 1919, 55 men were thus arrested. All of these men were held under arrest for several hours before being released. Of these groups, it seems, all except 4 eventually entered the employment of plaintiff, and that these 4, as a result of the humiliation to which they were subjected by such arrest, or for some other reason, elected to return to their former residences.

The history of defendants' interference with persons employed by plaintiff, or seeking to enter of their own initiative plaintiff's employment, is not fully covered by the affidavits on file; but, as already stated,

this procedure has been pursued since a few days after the declaration of the strike. On one day, October 16, 1919, some 200 persons came to Cleveland for the purpose of entering the employ, either of plaintiff or of some other manufacturer of steel and iron products. All of these were arrested, detained, investigated, and escorted by the police out of the city.

A graphic description of their departure is given in the affidavit of E. R. Shields. Mounted policemen were stationed outside the railway station entrance. A double line of police officers guarded the means of escape inside the station. The men in charge of the policemen were marched through the lines of guards to the departing train. One of the group who tried to escape was violently thrown back by the police into the ranks and compelled to go with the others.

All of the group, according to this witness, were men of respectable dress and appearance, and many of them in uniform of discharged soldiers of the United States army and navy. The newspapers of the city next day reported that 200 men who had come to the city to work in the plants of the plaintiff had been stopped by the police and compelled to board trains and leave town. This merely conforms to what the newspapers had previously reported and quoted the mayor as declaring would be done with all strike breakers.

Another affidavit, of a police officer, filed on behalf of the defendants, admits the arrest and detention of all these men, and further says that the men stated they had been brought to the city to work in the steel plant, and had been told that no strike was in progress, and that upon learning that a strike was still in progress they expressed a desire to return to their former residences upon transportation being secured.

He then says they were released, and that affiant is informed that they returned to Chicago. Duly considered, this affidavit does not contradict a single feature of the atrocities perpetrated upon these men. The officer's statement that, upon being informed a strike was in progress, they voluntarily expressed a desire to return is, to put it mildly, not worthy of credit.

Other affidavits filed on behalf of plaintiff, assert that as a result of this procedure plaintiff has, during the months of October, November and December, lost the services of some 400 men, and that the effect is to make it exceedingly difficult to procure men to operate its several plants. That such is the necessary and reasonable consequence of this procedure seems evident.

Peaceful, law-abiding citizens stand in awe of being arrested, and have a proper respect for public authority. The mere proclamation by the mayor and chief of police of a city that all persons seeking to enter the employment of the plaintiff, to take the place of other persons who have left that employment, will be arrested, detained, and investigated, would inevitably tend to prevent the plaintiff from obtaining employés and other persons to enter into its employment. The prejudicial effects to the plaintiff are sufficiently proved.

[3] That plaintiff is entitled to relief by injunction in this situation is obvious from a consideration of well-settled legal principles. It is engaged in a lawful business and has a right to conduct that business

without unlawful interference, either by its striking employés or by any other persons. It may solicit and procure persons to work in its plant, no matter where they reside, or whether citizens of the United States or not. No one may lawfully interfere with this right of plaintiff, and if deprived thereof its property is destroyed.

This is also equally true of all persons desiring to enter into the employment of plaintiff. To deny any such person that right because he does not live in Cleveland would be to abridge or deny to such person privileges and immunities belonging to every citizen of the United States and protected by its Constitution from a denial or abridgement by any state. The protection accorded by the Constitution of Ohio is equally sweeping. The power to preserve the public peace and to arrest and prosecute persons for crime cannot be made to support action depriving persons of these constitutional rights and privileges.

The courts have uniformly protected and enforced these rights by injunction. The legal principles which support equitable jurisdiction are too well known to require the citation of authority. The question has often arisen in suits to enjoin unlawful interference by striking employés and their pickets. Employés have ordinarily the right to leave an employment at will unless restrained by contract or law either singly or in combination.

They have a right peaceably to persuade others to do likewise and to refrain from taking the places thus vacated. They have no right, however, by violence, intimidation, coercion, or threats to prevent the former employer from conducting his business at will, or from obtaining other persons to take their places or to prevent such persons from seeking and entering the places thus vacated. The rights are at least equal. In all cases in which picketing has been allowed, the courts have not hesitated to restrain or regulate picketing in such a way as is necessary to prevent violence, coercion or intimidation being used against the persons employed or seeking to be employed to take the vacant places.

In the Hotel Statler Case (no opinion filed) the late Judge James L. Lawrence, in order to prevent intimidation and coercion and unreasonable interference with the employer's right to conduct business, restricted the number of pickets to two and regulated the manner of picketing. In the Keith Hippodrome Case (no written opinion), upon full consideration, I entered an order limiting the number of pickets that might be used to two, and also regulated the manner in which notice might be given to patrons of the theater that a strike was in progress and that the strikers wished patrons to withdraw their beneficial patronage.

In the Overland-Willys Case, 263 Fed. 171, in Toledo, where some 18,000 employés were on a strike and large factory buildings with 12 entrances were involved, Judge John M. Killits limited the number of pickets on duty at any one time to 50, not more than 6 of whom should be on duty at any one gate, and required each of them to wear a conspicuous numbered badge, in order that any picket guilty of threatening, intimidating, coercing, or attempting so to do might be identified and proceeded against for contempt.

The principles applied in the foregoing cases are equally applicable here. What striking employés may not themselves do to prevent an employer from conducting his business may not be done by police officers under the guise of preserving the peace or preventing crime. Such conduct is outside any power or authority conferred by the law on police officers. Injunction will lie against police and other officers when thus acting beyond lawful power.

Of the numerous authorities to this effect it will be sufficient to cite the following: Noble v. Union River Logging Railroad Co., 147 U. S. 165, 13 Sup. Ct. 271, 37 L. Ed. 123; Ex parte Young, 209 U. S. 159, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Philadelphia Co. v. Stimson, Secretary of War, 223 U. S. 620, 32 Sup. Ct. 340, 56 L. Ed. 570.

Nor will calling such employés strike breakers enlarge the power of police officials. A strike breaker is merely one who takes the place of a workman on strike. New Standard Dictionary and Webster's New International, 1919.

Defendants in this hearing seek to give a different meaning to the term "strike breaker," but the procedure followed since first adopted shows that the illegal arrest and interference has been with persons whose only offense was taking the place of plaintiff's former employés at the time on a strike. The criminal procedure for arresting and prosecuting for crime is no different when applied to strike breakers, as thus defined than to any other persons guilty of crime.

Certain positions taken by defendant's counsel should be briefly noticed in order to avoid misunderstanding. Numerous cases are cited in which the injunctions against police officers have been refused when sought by saloon keepers, pool sellers, and lodging house keepers, seeking to enjoin the lessee from interfering with their business by stationing a policeman in uniform at the entrance thereto, and, in some cases, giving information to all persons seeking to enter.

Among these cases is Delaney v. Flood, 183 N. Y. 323, 76 N. E. 209, 2 L. R. A. (N. S.) 678, 111 Am. St. Rep. 759, 5 Ann. Cas. 480. Numerous others are cited in a note thereto. Criticism of this case in the editor's note meets with my approval, but, subject to the limitation thus indicated, I entertain no views of the law different from those stated in the opinion, nor in the other cases cited. The plaintiffs in those cases do not come into equity with clean hands and were properly denied relief.

It may also be conceded that in certain exceptional situations the difficulty of preserving the public peace and danger of riot may be so great that a court of equity will not interfere on injunction to protect a party in the exercise of plain legal rights, but will leave him to his political or legal remedies.

Of this class of cases is Bennett v. Babcock, decided October 30, 1919, by Shafer and Ford, common pleas judges in Pittsburgh, in which an injunction was refused because of the special conditions of the case to prevent the police from forbidding the exercise of the right of public assembly. The injunction might also have been refused on the ground that no right of property in plaintiff was involved, but only political rights.

Another case of this class is Star Opera Co., Inc., v. Hylan, 178 N. Y. Supp. 179, decided by Judge Giegerich of the New York Supreme Court, October 27, 1919, in which an injunction was refused to prevent police from prohibiting the giving of a public performance of a German opera. The judgment in both cases was rested upon the exceptional conditions stated in the opinions. I concur in both the judgment and the reasoning in both cases. Nothing appears in the present case disclosing any similar condition warranting the refusal of a court of equity in the exercise of sound judicial discretion to grant an injunction to protect plain property rights and remit the plaintiff to his legal remedies.

A preliminary injunction will be granted as prayed. Bond in the sum of $2,000 will be given before the injunction takes effect. The scope of the injunction should be clear from this opinion; but, in order to prevent misunderstanding a provision may be added thereto in these words: That nothing herein contained shall be taken as preventing the arrest of any person on a warrant duly and regularly issued, nor the arrest without warrant of any person as to whom the arresting officer has information or knowledge reasonably calculated to induce the belief that such person be guilty of felony, nor the arrest without warrant upon view of any person found violating any penal statute of the United States or the state of Ohio, or ordinance of the city of Cleveland.