### NELSON v. UNITED STATES. *

Circuit Court of Appeals, Eighth Circuit.
March 14, 1927.

No. 7310.

1. Criminal law ⬅➡394—Court properly refused to suppress evidence secured by officers in search of defendant's automobile, acting on defendant's reputation and suspicious conduct.

Where officers, in making search of automobile, acted on defendant's reputation as a law violator and his suspicious conduct immediately preceding search, lower court was justified in denying motion to suppress evidence.

2. Criminal law ⬅➡698(1)—Defendant, on failing to save exceptions on denial of motion to suppress evidence, was not entitled to again raise same question.

Where motion to suppress evidence was made and denied at opening of trial, and no exceptions saved, defendant was not entitled to delay trial by again raising same question.

3. Searches and seizures ⬅➡7(26)—Husband, claiming no interest in liquor found on wife, cannot complain if her constitutional rights were violated.

Where husband claimed no interest in liquor found on his wife on search of automobile in which they were riding, he cannot complain if her constitutional rights were violated.

*Rehearing denied May 25, 1927.

4. Criminal law ⬅➡901—Defendant waived motion for directed verdict by introducing evidence at close of government's case.

Defendant waived motion for directed verdict, made at close of government's case, by introducing evidence in his own behalf.

5. Indians ⬅➡35—Evidence held to show aiding or procuring offense of possession of intoxicating liquors in Indian country (Comp. St. §§ 4137a, 4137aa, 10506).

In prosecution under Act March 2, 1917, § 17, and Act June 30, 1919, § 1 (Comp. St. §§ 4137a, 4137aa), for possession of intoxicating liquor, evidence *held* sufficient to show that defendant was at least aiding or procuring commission of an act constituting an offense, within Criminal Code, § 332 (Comp. St. § 10506).

Lewis, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

Fred Nelson was convicted of possession of liquor in the Indian country, and he brings error. Affirmed.

W. J. Crump and Augustus C. Seawel, both of Muskogee, Okl., for plaintiff in error.

W. L. Coffey, Asst. U. S. Atty., of Tulsa, Okl. (John M. Goldesberry, U. S. Atty., of Tulsa, Okl., on the brief), for the United States.

Before STONE and LEWIS, Circuit Judges, and SYMES, District Judge.

SYMES, District Judge. Plaintiff in error, Fred Nelson, and his wife, Bessie Nelson, were indicted and convicted of a felony, to wit, possession of intoxicating liquor, two pints of whisky, in Osage county, Okl., the same being in and upon Indian country. Fred Nelson alone brings the case here, the writ having been dismissed as to Bessie Nelson.

The indictment rests upon two statutes. Section 17 of the Act of March 2, 1917, 39 Stat. 969 (U. S. Comp. Stat. § 4137a), reads, "That all of Osage county, Oklahoma, shall hereafter be deemed to be Indian country within the meaning of the acts of Congress making it unlawful to introduce intoxicating liquors into the Indian country;" and by Act of June 30, 1919, 41 Stat. 4 (U. S. Comp. Stat. 1923 Supp. § 4137aa), it is provided "that on and after July 1, 1919, possession by a person of intoxicating liquors in the Indian country or where the introduction is or was prohibited by treaty or federal statute shall be an offense and punished in accordance with the provisions of the Acts of

July 23, 1892 (27 Stat. p. 260), and January 30, 1897 (29 Stat. p. 506)."

The errors assigned may be grouped under four heads: (1) Error in overruling motion to quash indictment and suppress evidence. (2) Permitting Graves and Cooper, two government witnesses, to testify as to the results of a search of the persons of the defendants after arrest. (3) Refusal of the lower court to direct a verdict at the close of the government's case, and at the close of all the testimony. (4) Alleged errors in the court's instructions to the jury. For convenience points 1 and 2 may be discussed together.

1, 2. Nelson and his wife, while driving an automobile on the public road, were stopped by the three officers, the prosecuting witnesses, searched, and liquor found in the possession of the wife, Bessie Nelson. At the opening of the trial defendants filed a written motion to exclude the evidence of these witnesses on the ground that they had no search warrant. This motion was denied and no exception taken. The motion was renewed after the trial had begun, whereupon the court excused the jury and offered to take testimony from both sides on the question. No evidence was tendered, except that of the three officers. The court made a finding of fact that they were justified in intercepting the automobile, and arresting and searching the defendants without a warrant. The objection was again renewed when the first of the officers was called to the witness stand.

The facts are: Nelson, his wife and brother, residents of Hominy, Osage county, Okl., left town very early one morning in Nelson's car for Sapulpa. After proceeding some distance they turned around because, as one of them testified they found the road impassable, and were on their way back to town when they were first stopped by the witness Pyle, and the car and their persons searched. No liquor was found and they were permitted to go. Before reaching town, they passed officers Graves and Cooper. Cooper was a police officer in Hominy, and Graves and Pyle, who had joined them, were agents of the Interior Department charged with the suppression of liquor traffic among Indians. The officers followed, and passing them, as they made a detour to avoid going through town, ordered them to stop, stating that they wanted to arrest and search them for whisky, which they proceeded to do. Nothing was found in the automobile or on the persons of Fred Nelson or his brother. The officers testified that Mrs. Nelson was dressed very thinly, and that they saw two large, old-fashioned whisky bottles concealed in her bosom. She objected to being searched, unless it was done by a woman. The officers acquiesced, and they all drove to the home of a Mrs. Mitchell, who searched Mrs. Nelson and found an empty bottle on her. One of the agents testified that, while driving to the Mitchell home, Mrs. Nelson emptied one of these bottles, containing corn whisky, so that it saturated her clothing and the seat and floor of the automobile with the liquid.

Cooper, the local police officer, testified that he saw them leave town on the morning in question; that he had information that defendants were accustomed to go out in the country early in the morning and bring back whisky, just at the time the night police shift went off duty, and return before the day shift went on; that Fred Nelson had been refused a license to drive a taxicab, because he trafficked in liquor; and that he had caught him once before in a liquor violation and obtained a conviction against him. The other two officers had practically the same information.

The facts in Carroll v. U. S., 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790, are in many respects similar to those in the case at bar There the officers, late in September, 1921, had some conversation with Carroll and one or two others for the purchase of liquor, but the negotiations came to naught. During the two months following, and up to the time of the arrest, the same officers were engaged in patroling the main highway leading from Detroit to Grand Rapids looking for violations of the Prohibition Act. They had observed Carroll going by on more than one occasion in an automobile. On December 15th the officers again saw Carroll and another of the defendants coming out of Detroit. They stopped them and searched the car and found a quantity of liquor therein. The court stated as a fact that "the officers were not anticipating that the defendants would be coming through on the highway at that particular time, but when they met them there they believed they were carrying liquor, and hence the search, seizure, and arrest."

The opinion states that Congress, by the National Prohibition Act and the act supplemental to national prohibition (42 Stats. 222, 223 [Comp. St. § 10138¼ et seq.]), made a clear distinction between the necessity for a search warrant in searching private dwellings, and that of automobiles, and that such distinction is not inconsistent with the Fourth Amendment of the Constitution,

which, as has been frequently held, denounces only such searches and seizures as are unreasonable. Boyd v. U. S., 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746, points out that the search for, and seizure of, stolen and forfeited goods, or goods liable to duties, being concealed to avoid the payment thereof, or articles which it is unlawful for a person to have in his possession, is a totally different thing from a search and seizure of the private books and papers of a citizen for the purpose of obtaining information to be used as evidence. Boyd v. U. S., supra; Weeks v. U. S., 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Silverthorne Lumber Co. v. U. S., 251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319; Gouled v. U. S., 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647; Amos v. U. S., 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654—do not pass upon the question at bar. The Carroll Case further says that the primary object of section 26, tit. 2, of the prohibition statute (Comp. St. § 10138½mm) is the seizure of contraband liquor, and that the arrest of the transporter is merely incidental.

Page 158 (45 S. Ct. 287): "The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for the belief that the contents of the automobile offend against the law." In other words, the car is the offender. And page 149 (45 S. Ct. 283): "On reason and authority the true rule is that, if the search and seizure without a warrant are made upon probable cause—that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction—the search and seizure are valid." And page 161 (45 S. Ct. 288): " 'If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed. it is sufficient.' " See, also, Garske v. U. S. (C. C. A.) 1 F.(2d) 620.

[1] In view of the testimony in this record, we do not feel justified in saying that the lower court erred in denying the motion to suppress the evidence. The officers acted upon the defendant's reputation as a law violator, his suspicious conduct, the unusual hour of the day he was out ,and their knowledge of his previous conviction for a similar offense, etc. We are not permitted to substitute our judgment for that of either the officers or the lower court, as long as we

find no abuse of the measure of discretion that they must necessarily be allowed to exercise. There is nothing to show that the officers were actuated by any other motive than a proper performance of their duty.

[2, 3] It appears that the same motion had been made and denied at the opening of the trial, and no exceptions saved; so as a matter of right the defendant was not entitled to delay the trial by again raising the same question. Such objections must be seasonably presented. Rossini v. U. S., 6 F.(2d) 350 (8th C. C. A.). Further, the liquor in question to which defendant's objection goes, was found on Mrs. Nelson, who is not objecting. The husband claims no interest in it, and cannot complain if her constitutional rights were violated. Brooks v. U. S. (C. C. A.) 8 F.(2d) 593; Bilodeau v. U. S., 14 F. (2d) 582. And as said in McGuire v. U. S. (Jan. 3, 1927) 47 S. Ct. 259, 71 L. Ed. ——: "Even if the officers were liable as trespassers ab initio, which we do not decide, we are concerned here not with their liability, but with the interest of the government in securing the benefit of the evidence seized, so far as may be possible without sacrifice of the immunities guaranteed by the Fourth and Fifth Amendments."

[4, 5] 3. The defendant did not stand on his motion for a directed verdict at the close of the government's case, but waived it by introducing evidence on his own behalf. Marron et al. v. U. S. (C. C. A.) 8 F.(2d) 251; Youngblood v. U. S. (C. C. A.) 266 F. 795. We do not find that this motion was repeated at the close of all the testimony. While defendant was not shown to have had any liquor actually on his person, yet the jury were justified in believing, as they evidently did, that he was at least aiding or procuring the commission of an act constituting an offense defined in any law of the United States (C. C. § 332 [Comp. St. § 10506]), and, as his counsel argues, there is a presumption that he is in some measure responsible for the criminal acts of his wife committed in his company.

"And if a wife act in company with her husband in the commission of a felony, other than treason or homicide, it is conclusively presumed that she acted under his coercion, and is consequently without any guilty intent." Trust Co. v. Sedgwick, 97 U. S. 304, 24 L. Ed. 954.

4. The last point relates to alleged improper remarks of the court made in the course of his instructions to the jury. The language referred to might well have been left unsaid, but no specific exception was tak-

en thereto, and when read in the light of the instructions as a whole, does not require reversal on our own motion.

It follows that the judgment of the lower court should be affirmed; and it is so ordered.

LEWIS, Circuit Judge (dissenting). On a joint charge of having in their possession two pints of whisky in Indian country, to wit, Osage County, Oklahoma, plaintiff in error, Fred Nelson and his wife, Bessie Nelson, were convicted and sentenced, he to two years' imprisonment in the penitentiary and to pay a fine of $300, and she to six months' imprisonment in the Osage County jail and to pay a fine of $250. They sued out this writ of error, but the writ has been dismissed as to Bessie Nelson.

The assigned errors to which I will give attention, and which I think require a reversal, are these: (1) Refusal of the court to suppress the evidence of witnesses Graves and Cooper, and permitting them to testify to what they discovered after the arrest of Nelson and his wife while they were held in custody, no warrant of arrest having been issued; (2) error in the charge given by the court; and (3) refusal of the court at the close of the evidence to direct verdicts of acquittal.

On the day of trial, but before the jury was impaneled, the two defendants filed their verified motion asking, in the alternative, that the indictment be either quashed or the evidence of the only three witnesses, Graves, Cooper and Pyle be suppressed: (a) Because they were the only witnesses before the grand jury on whose testimony the indictment was returned, that said witnesses stopped the defendants while they were traveling upon a public highway in Osage County and searched their automobile and arrested and searched the defendants, and they did not have either a search warrant or a warrant for the arrest of either defendant; (b) because said witnesses unlawfully compelled defendants to submit to said arrest and to the search of the automobile in which they were riding and to the search of their persons, in violation of the rights of defendants. This motion was overruled. No exception was saved. Thereupon a jury was empaneled. The prosecution called as its first witness Mr. Cooper and the defendants objected to his testifying for the reasons set out in the motion which had been overruled. The objection was overruled and the defendants excepted. The witness was permitted to give testimony and stated that he and Mr.

Graves were in an automobile following the defendants on the highway, that they drove around defendants' car and stopped them. Defendants' counsel renewed his objection. Discussion ensued. The court said the motion to quash or suppress had been filed out of time but that the defendants would be permitted to examine the witnesses out of the hearing of the jury as to the facts relating to the arrest and search. The defendants then asked that they be permitted to cross-examine the Government's witnesses on that subject. The court overruled that request, allowed defendants an exception and permitted an examination by defendants' counsel of the Government's three witnesses on the subject. The jury had been excluded. The witnesses were cross-examined by the district attorney. Objections were made and exceptions taken to this method of procedure. From this examination it appears that Nelson and wife resided in the town of Hominy, Osage County, Oklahoma, that about daylight one morning in June, 1925, Nelson and wife and Nelson's brother went out of town in Nelson's automobile. They took a road leading to the south. (Mrs. Nelson later testified that they were going to Sapulpa to buy a yellow cab, but finding the road bad on account of work done on it they turned to come back to Hominy to take another road.) On turning back, and when about four miles from Hominy, they were met by witness Pyle, who stopped them, arrested them, searched the automobile and searched the persons of Nelson and his brother for whisky, but finding none permitted them to go on. Pyle did not have a warrant. When within about two miles of Hominy they passed Graves and Cooper in an automobile standing at a cross-road. Graves and Cooper followed them. Cooper was driving the automobile. He was a police officer in Hominy and Graves and Pyle were agents in the Interior Department for the suppression of the liquor traffic among Indians. Mr. Graves gave the title of the positions which they held as United States Deputy Special Officer, Interior Department. The defendants did not enter the town of Hominy, as Graves and Cooper expected they would, but turned to the east on a country road leading to Sapulpa when they reached the south line of the town, and after they had proceeded a short distance Graves said to Cooper: "Speed up and let's pass them and see what they have got." Cooper complied with Graves' direction. They had neither search warrant nor warrant of arrest. They stopped defendants' automobile and Mr. Graves told Nelson, his

wife and his brother he would have to arrest them and search for whisky. Graves appears to have been in charge and directed the proceedings. Cooper testified that the three were taken out of the car and Nelson and his brother were searched. Graves searched Fred Nelson and Cooper searched Fred's brother. Up to the time the car was stopped and its occupants notified that they were under arrest and had gotten out of the car, neither Graves nor Cooper had any personal knowledge of whisky being in the automobile or on the persons of any of its occupants. None was found in the automobile and none was found on the persons of Fred Nelson and his brother. But after they had gotten out of the car and were being searched Graves and Cooper testified that they then saw the shapes or outlines of what they took to be two bottles under Mrs. Nelson's dress. They both testified that these shapes were in the bosom of her dress. (Graves, however, later in his testimony put them just above the waist line.) Mrs. Nelson objected to being searched, and Graves said to her: "Fair enough, but this is one time you are going to be searched." He had all three get back into their automobile, he got into it with them, and at his direction it was driven to the home of Mrs. Mitchell, who searched Mrs. Nelson at the request of Graves. She found on Mrs. Nelson an empty bottle. Before reaching the home of Mrs. Mitchell, Graves took from Mrs. Nelson an empty bottle. These were apparently the two bottles concealed in Mrs. Nelson's clothing, and Graves testified that after they started to the home of Mrs. Mitchell, Mrs. Nelson emptied those bottles of corn whisky, saturating her clothing and the seat and floor of the automobile with the liquid. I think there can be no doubt that Nelson, his wife and his brother were put under arrest as soon as their automobile was stopped and before they had gotten out of it. Graves and Cooper both said so in their testimony. Thereafter they were subjected to the will and orders of Graves, and he continued to exercise that power over them until Mrs. Nelson had been searched by Mrs. Mitchell. This preliminary inquiry also disclosed, on the district attorney's cross-examination, as the claimed justification of Graves in making the arrests, the following:

Nelson and wife had the reputation of being whisky peddlers, commonly called bootleggers. Nelson had been convicted a year or so before this for violating the prohibition law. Cooper testified that he had been informed the defendants would go to the country early in the mornings, get whisky and come back to town with it, and that this had occurred on numerous occasions. He saw them leave town in their automobile on this morning about daylight, but he had no information as to where they were going or what their purpose was in leaving town on that particular morning. He evidently presumed that they were going for whisky. He went and woke up Graves and Pyle and told them that Nelson and wife had just left town in an automobile. Thereupon Pyle got into an automobile, Graves and Cooper into Cooper's automobile, and they went out the road that Nelson had taken, Pyle preceding the other two. Graves testified to having received the same information, in substance, as testified to by Cooper (probably from Cooper), that the defendants were bootleggers and that they brought whisky to town from the country. The trial was on November 25, 1925, and Graves had resided in Hominy since March 2d preceding. Neither Graves nor Cooper testified that he had ever seen the defendants bringing whisky to town or possessing it in any way, or selling it, nor did either testify that he had been informed that the informer had ever seen the defendants engaged in such acts, or that the informer knew that Nelson was in the practice of bringing whisky to town from the country. Neither testified that he was informed that either Nelson or his wife had ever been seen in the possession of whisky, transporting whisky or selling whisky, by them or anyone else. Graves and Cooper did not claim to know of any place in the country where Nelson might get whisky. The court then overruled defendants' motion to suppress the testimony of Graves and Cooper, stating as ground therefor, that the information they claimed to have had justified their conduct in making the arrests and search without warrants. The arrest of Nelson and wife was not made because of any offense that they had theretofore committed, with the intention of prosecuting them therefor. It was made for the admitted purpose of apprehending them for the offense which it was supposed they were then committing. Assuming for the purpose of this case, without deciding, that Graves had the powers of a peace officer, I think there can be no doubt that the arrest and search of the persons of Fred Nelson and wife were lawful if they were then committing a felony in the presence of Graves to the latter's knowledge, or were about to commit an offense with like knowledge on the part of Graves. No such knowledge is claimed. Graves, with the as-

sistance of Cooper, acted solely on the information stated and the bad reputation of Nelson, plus their inferences therefrom. From what they had heard it looked suspicious to them that Nelson should leave town early in the morning. In 5 C. J. pp. 416, 417, the rule is given thus:

"The reasonable and probable grounds that will justify an officer in arresting without a warrant one whom he suspects of felony must be such as would actuate a reasonable man acting in good faith. * * * The necessary elements of the grounds of suspicion are that the officer acts upon a belief in the person's guilt, based either upon facts or circumstances within the officer's knowledge, or upon information imparted to him by reliable and credible third persons, provided there are no circumstances known to the officer sufficient to materially impeach the information received. It is not every idle and unreasonable charge which will justify an arrest. An arrest without a warrant is illegal when it is made upon mere suspicion or belief, unsupported by facts, circumstances, or credible information calculated to produce such suspicion or belief."

The question in Garske v. United States (C. C. A.) 1 F.(2d) 620, was whether the offense was being committed in the view of the officer, and this court said:

"The proper test, supported by the great weight of authority, by which this case should be decided is, were the circumstances presented to the officers through the testimony of their senses sufficient to justify them in a good-faith belief that plaintiff in error was in their presence transporting liquor in violation of law or that he had in their presence liquor in his possession in violation of law? In other words, was there probable cause for them to so believe, or were the facts sufficient to give rise merely to a suspicion thereof? If the former, the arrest was legal and the evidence secured by it admissible. If the latter, the arrest was illegal, and the evidence obtained not admissible."

If the arrest and search in this case was unlawful, the witnesses could not testify to what they discovered while defendants were in unlawful custody. Amos v. United States, 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654; Green v. United States (C. C. A.) 289 F. 236; Snyder v. United States (C. C. A.) 285 F. 1, 3. I do not see that the reputation of Nelson as testified to by Graves and Cooper, and the fact of a prior conviction, is material to the justification. It would be going too far to say that, on that, whenever Nelson should leave town in his automobile early

in the morning Graves would have a right to arrest and search him. Applying the foregoing principles, the proof, in my opinion, failed to show that the information on which Graves claimed to act afforded reasonable ground for a belief that Nelson was committing a felony. That information, so far as the record shows, may have been based on street gossip and rumor and not on reports of facts by reputable and credible persons. The Carroll Case, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790, is relied on for an affirmance. The facts in that case are materially different from the facts in this case. There the arresting officers personally knew that the Carrolls were then engaged in the liquor traffic. They had tried to furnish liquor to these officers, and when they were stopped and arrested they were coming from their known source of supply. Here the arresting officers had no personal knowledge, and their information, so far as the record shows, rested only on rumor and street gossip. Graves testified that he went out that morning at the instigation of Cooper, and Cooper testified that he had been watching for a chance to get Nelson. It was not denied that Cooper cherished an ill feeling for Nelson because of a serious controversy he had theretofore had with Nelson's wife. Cooper's claim about Nelson having a source of supply in the country was the merest suspicion. His voluntary statements demonstrate that he was anxious to justify the action taken on his instigation. If Graves and Cooper had reasonable cause to believe that Nelson and wife were committing a crime or were about to do so, it was their duty to swear out warrants of arrest and search. No reason appears why they did not, as in the Carroll case. They acted on the assumption that the Nelsons were coming back to town, and there was ample time. Cooper says he had been waiting for the chance. There was no sudden emergency. They had no thought of the Nelsons getting away or trying to evade them.

In Garske v. United States. supra, we said:

"If the seizure is merely based upon a suspicion, and the facts are not sufficient to justify an arrest, the subsequent discovery by an examination of the evidence, secured by the seizure, that the suspicion was in fact well founded, is not sufficient to make what was unlawful at its commencement, a lawful search."

Furthermore, the burden of proof was on the prosecution to sustain the legality of

the arrest, and the court erred in placing it on the defendants. The verified motion was accepted as the basis of the challenge to the admissibility of the evidence and it made a prima facie' case. It was then the duty of the district attorney to show that the information was of such character that it would move a reasonably prudent person to rely on it as true and induce him to act. He was required to establish its admissibility. In 5 C. J. pp. 396, 408, it is said:

"In the arrest of a person without a warrant, the burden of proof is with the person arresting or causing the arrest, to show that the arrest was lawful. * * * Where the legality of the arrest for a breach of the peace is questioned, the burden of proof is on the officer, and the officer also has the burden of proof to show reasonable grounds in all cases."

In actions of tort for false imprisonment, the gist of which is unlawful detention, the burden is always on the arresting officer. If he have a warrant, that is full justification; if not, he must both plead and prove facts which justify his action—either personal knowledge or information that he had received from reputable and credible sources of facts which would cause a reasonably prudent person to believe that the felony had been committed or was about to be committed or was being committed. Bean v. Beckwith, 18 Wall. 510, 515, 21 L. Ed. 849; Chandler v. Rutherford (C. C. A.) 101 F. 774; Pritchett v. Sullivan (C. C. A.) 182 F. 480; Castle v. Lewis (C. C. A.) 254 F. 917; American S. & W. Co. v. Davis (D. C.) 261 F. 800; Jackson v. Knowlton, 173 Mass. 94, 53 N. E. 134; Marshall v. Cleaver, 4 Pennewill (Del.) 450, 56 A. 380; Edger v. Burke, 96 Md. 715, 54 A. 986; Shanley v. Wells, 71 Ill. 78; Franklin v. Amerson, 118 Ga. 860, 45 S. E. 698; Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790. The court erred in putting the burden on Nelson and wife to show an unlawful arrest, in permitting the district attorney to cross-examine Graves and Cooper and in holding that the proof showed a lawful arrest, and in then permitting them to testify to what they discovered after the arrest while Nelson and wife were unlawfully held in custody by Graves.

2. The charge against Nelson and wife was the possession of intoxicating liquor. Conceding now that the arrest was lawful and that Graves and Cooper were competent witnesses of facts which they thereafter discovered—there is no evidence of the physical possession of whisky by Fred Nelson, either on his person or in his automobile, nor that he held joint possession with his wife. The two bottles concealed in his wife's clothing was the only whisky found. There is no testimony as to when or where she obtained it, whether she had it on her person that morning when she left home, and whether her husband knew she had it at that time, or whether she got it later. There is no evidence whether she had it with the knowledge and consent of her husband or against his wishes, and none that he had any dominion or control over it. There is no evidence whatever on that subject. It is now said that Mrs. Nelson's possession of the two bottles in the presence of her husband was his possession— and that too in the face of the fact that she was convicted of having them in her possession and sentenced therefor to imprisonment; that is to say, her dominion and control, necessary to her conviction, is now transferred to his dominion and control in order to sustain his conviction. That dilemma was presented at the trial, but on conviction and sentence of Mrs. Nelson the prosecution's right to make the choice now suggested had been waived and lost. Having convicted her because of her personal possession and control, there is no ground for the claim that he had possession in the absence of proof that it was a joint possession. There was a total failure of proof of the charge against Fred Nelson and the court erred in refusing to instruct the jury to acquit him, as requested. At the conclusion of all the evidence defendants asked the court to give this instruction: "You are instructed to return a verdict of not guilty as to each of the defendants herein because the only evidence offered by the Government to sustain the charge contained in the indictment was secured by means of an unlawful search of the person and in violation of the Fourth and Fifth Amendments to the constitution of the United States." It was refused by the court and an exception allowed and that refusal is assigned as error. I think it was error to refuse to grant the request. As I read the record the conduct of Graves and Cooper was without lawful justification. It was official tyranny and oppression over the citizen and in violation of his most fundamental guaranteed rights.

3. During the taking of testimony before the jury, the witness Cooper testified, over objection of defendants, that they had information that defendants were frequently going out early in the morning for the purpose of transporting intoxicating liquor. When it came to instruct the jury, the court, among other things, said:

"But as I said to you, in my opinion, this is a very simple case. These people were in the liquor business, it looks that way to me. * * * She and her husband were in the liquor business, started out there that morning very early in the morning."

Exceptions were táken to this. Who can say with any confidence that the jury did not rely on this statement of the court and convict the defendants because they were in the liquor business? In form the verdict of the jury said it found Fred Nelson guilty "as charged in the indictment." But can any one who knows anything about the practical working of the jury system doubt that some jurors may have been induced to vote guilty because they thought it would not be amiss, inasmuch as Fred Nelson and his wife were, in the opinion of the court, engaged in the liquor business? It seems impossible to believe that this part of the charge was not prejudicial, notwithstanding the court followed it up by saying that the jury were the sole judges of the facts.

For the reasons stated I think there should be a reversal of the judgment.